No. 91-253

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

STATE OF MONTANA,

     Plaintiff and Appellant,

  -vs-

MARY KELLY YARNS,

     Defendant and Respondent.

FILED

FEB 1 2 1992

Cal Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Thomas A. Olson, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

          Marc Racicot, Attorney General, Helena, Montana;
John Paulson, Assistant Attorney General, Helena,
Montana; Mike Salvagni, County Attorney, Bozeman,
Montana; Gary Balaz, Deputy County Attorney,
Bozeman, Montana.

     For Respondent:

          Marcelle C. Quist; Bolinger & Quist, Bozeman,
Montana.

Submitted on Briefs:  September 19, 1991

Decided:  February 12, 1992

Filed:

_____
Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

The appellant, State of Montana, appeals an order of the District Court of the Eighteenth Judicial District, Gallatin County, dismissing the State's appeal of a Justice Court order suppressing evidence, remanding the case to the Justice Court, and directing that the time of the appeal be charged to the State and that the Montana Department of Fish, Wildlife and Parks pay the fees of appointed defense counsel. We reverse and remand to the District Court for a trial de novo.

The issues on appeal are:

1. Did the District Court err in remanding the case to the Justice Court for trial after the State had appealed from the Justice Court's order suppressing evidence?

2. Did the District Court err in ordering the fees of appointed defense counsel to be paid by the Montana Department of Fish, Wildlife and Parks?

On March 11, 1990, officials of the Montana Department of Fish, Wildlife and Parks learned that approximately eighteen buffalo were at Horse Butte on Hebgen Lake, which is located ten miles northwest of West Yellowstone, Montana and five miles outside of Yellowstone National Park in Gallatin County. That evening a game warden notified three buffalo hunters that a hunt would take place on March 13, 1990.

On the morning of March 13, the hunters met with several game wardens and other persons including a biologist, a researcher,

2

three State veterinarians, a national park ranger, and members of the news media. The group then traveled on snowmobiles to the Horse Butte area where the buffalo had last been seen. The buffalo were gone when the group arrived. Several State officials then searched for the buffalo, which were found being herded toward Yellowstone National Park by a group of eleven men and women. The officials were advised that this group was there to prevent the killing of the buffalo.

Eventually, hunter Hal Slemmer shot one of the buffalo. As Mr. Slemmer was standing with a game warden near the buffalo, he was approached by a woman who was with the protest group. The woman, later identified as the defendant Mary Yarns, dipped her hand into the blood of the buffalo and wiped both of her cheeks with the blood. After making a comment to Mr. Slemmer, the phraseology of which is disputed by the parties on appeal, the defendant then wiped the blood from the buffalo down the middle of Mr. Slemmer's face.

On July 3, 1990, the Gallatin County Attorney filed a complaint in the Justice Court, charging the defendant with misdemeanor assault in violation of § 45-5-201(1)(c), MCA (1989). The complaint was supported by an affidavit of probable cause and alleged that on March 13, 1990, the defendant had purposely or knowingly made physical contact of an insulting or provoking nature with Hal Slemmer when she wiped Mr. Slemmer's face with the blood from a buffalo. The defendant was arrested on July 7, 1990.

Trial in Justice Court was set for December **20, 1990.** On the morning of trial, but prior to its commencement, the State filed a motion in limine requesting a pretrial ruling on the admissibility of a videotape which depicted the events surrounding the hunt protest. The State argued that the entire tape was admissible under the transaction rule, § **26-1-103,** MCA **(1989),** and was necessary to show the defendant's purpose in going to the buffalo hunt location and her intent at the time she committed the assault. The Justice Court ruled that it would allow the State to present only that portion of the videotape showing the blood being placed on Mr. Slemmer's face and the scenes immediately following that event. The State was not allowed to present portions of the videotape showing another protest group member assaulting another hunter prior to the assault with which the defendant is charged. Those prohibited portions of the videotape also show actions of other members of the group.

The State then filed a notice of appeal from the Justice Court's order for trial de novo in the District Court of the Eighteenth Judicial District, Gallatin County, and moved to transfer the Justice Court record to the District Court. Trial in the District Court was set for March 25, **1991.**

On January **16, 1991,** the defendant filed a motion to dismiss the State's appeal. The defendant's motion was briefed by the parties and argued to the District Court on February **19, 1991.** On March **21, 1991,** the District Court issued an order dismissing the

4

State's appeal, remanding the case to the Justice Court, and directing that the time of the appeal be charged to the State and that the Montana Department of Fish, Wildlife and Parks pay the fees of appointed defense counsel. The District Court relied on decisions from Kansas and Illinois as well as the American Bar Association Project on Standards for Criminal Justice in concluding that the State should be required to show that the suppression order seriously impeded the continuation of the prosecution in order for the State to exercise its right of appeal. The court concluded that the Justice Court's order did not seriously impede continuation of the prosecution and that the matter should be remanded for trial in the Justice Court.

I

Did the District Court err in remanding the case to the Justice Court for trial after the State had appealed from the Justice Court's order suppressing evidence?

The State contends that the District Court exceeded its constitutional and statutory authority by assuming the role of an appellate court, reviewing the Justice Court's order, and remanding the case for trial. It asserts that the proper procedure in this case was a trial de novo in the District Court.

Article VII, Section 4(2) of the Montana Constitution provides that the district court "[s]hall hear appeals from inferior courts as trials anew unless otherwise provided by law." Section 46-17-

5

311, **MCA** (1989), in effect at the time of the State's appeal, sets forth the appeal procedure for criminal cases arising in justice court:

> **Appeal.** (1) Except as provided in 46-17-203 [plea of guilty in justice court waives right to trial <u>de novo</u> in district court], all cases on appeal from justices' or city courts must be tried anew in the district court. . . .
>
> (2) **A** party may appeal to the district court by giving written notice of his intention to appeal within 10 days after judgment, except that the state may only appeal in the cases provided for in 46-20-103.
>
> . . .

The scope of the State's right to appeal is set forth in § 46-20-103, **MCA** (1989), which provides in pertinent part:

> **Scope of appeal by state.** (1) Except as otherwise specifically authorized, the state may not appeal in a criminal case.
>
> (2) The state may appeal from any court order or judgment the substantive effect of which results in:
>
> . . .
>
> (e) suppressing evidence;
>
> . . .

In State v. Kesler (1987), 228 Mont. 242, 741 P.2d 791, this Court held that the constitutional and statutory provisions set forth above require the district court to try anew any appeal by the State from a justice court order, entered pretrial, suppressing evidence. As in the present case, the State in <u>Kesler</u> appealed to the district court from a pretrial suppression order of the justice court. The defendant moved to affirm the suppression order and

dismiss the appeal, contending that the district court had appellate jurisdiction to review the suppression order. We held that a district court does not have appellate jurisdiction to review a justice court order suppressing evidence and that the clear legislative intent of § 46-17-311, MCA, is to require a trial de novo on all appeals from justice court.

> Section 46-17-311(2), MCA, as amended, now permits the State to appeal justice court orders and judgments in certain circumstances. The clear intent of Section 46-17-311(1), MCA, is to require a trial de novo in district court on all appeals from justice court. The legislature could have prohibited a trial de novo in district court by amending Subsection (1) of Section 46-17-311, MCA. The legislature did not prohibit trial de novo when it amended the statute and we will not judicially amend the statute to create such a prohibition.

Kesler, 228 Mont. at 245, 741 P.2d at 793.

The defendant argues that the Justice Court ruling was an evidentiary ruling rather than a suppression ruling and was therefore not appealable, citing People v. McCollins (Ill. App. Ct. 1984), 468 N.E.2d 196. In McCollins, the Appellate Court of Illinois, Third District, made a distinction, for purposes of the state's right of appeal, between the suppression of evidence and the exclusion of evidence. The defendant argues that a similar distinction should be made in this case. We disagree.

In State v. T.W. (1986), 220 Mont. 280, 715 P.2d 428, this Court addressed the issue of whether the district court's granting of the defendant's pretrial motion in limine, precluding the State from using certain evidence at trial, was appealable by the State pursuant to § 46-20-103(2)(e), MCA. Quoting from Rogers v. United

7

States (D.C. Cal. 1958), 158 F.Supp. 670, we stated that "suppress" means "to effectively prevent from using" and upheld the State's right to appeal from any pretrial order which effectively prevents the State from using evidence, regardless of whether the constitutional rights of the defendant are at issue. T.W., 220 Mont. at 287, 715 P.2d at 432.

The defendant further argues that the Justice Court's order was not appealable in light of this Court's decision in State v. Carney (1986), 219 Mont. 412, 714 P.2d 532. In Carney, we held that a midtrial ruling sustaining an objection to the admission of evidence could not be appealed by the State under § 46-20-103(2)(e), MCA. However, Carney is clearly distinguishable from the present case where the order was entered and appealed pretrial and the jury had not yet been impaneled and sworn. As we stated in T.W.:

> There is an important distinction between interlocutory appeals on pre-trial rulings and those taken in the course of the trial. Mid-trial appeals place the defendant in double jeopardy in violation of the Fifth Amendment to the United States Constitution and Article 11, Section 5 of the Montana State Constitution and are not appealable. State v. Carney (Mont. 1986), [219 Mont. 413,] 714 P.2d 532, 43 St.Rep. 54. No jeopardy attaches here, as the jury had not yet been sworn. Crist v. Bretz (1978), 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24. Because there is no double jeopardy problem in this case the ruling is appealable.

T.W., 220 Mont. at 287, 715 P.2d at 432.

The District Court in the present case recognized that the Justice Court's order was an order suppressing evidence within the meaning of § 46-20-103(2)(e), MCA (1989). However, while the

District Court acknowledged the State's right to appeal, it conditioned that right upon a showing that the suppression order substantially impaired or seriously impeded the State's ability to prosecute the case. The District Court relied upon State v. Newman (Kan. 1984), 680 P.2d 257, and People v. Young (Ill. 1980), 412 N.E.2d 501, to arrive at its conclusion that the State is required to make a showing of substantial impairment in order to appeal a suppression ruling. It also stated that the American Bar Association Project on Standards for Criminal Justice "recommends that the prosecution should not be permitted to appeal from pre-trial orders suppressing evidence unless 'the effect is to seriously impede, although not completely foreclose, continuation of the prosecution.'"

The State argues that this Court has not imposed such a condition upon the State's right to appeal. It further argues that the District Court's imposition of this condition, sua sponte and ex post facto, exceeded its authority and deprived the State of its statutory right to a trial de novo. We agree.

This Court in T.W. cited the Newman and Young decisions in rejecting a narrow interpretation of the appeals statute which would have limited interlocutory appeals by the State to situations where evidence was suppressed because it was obtained in violation of a defendant's constitutional rights. We did not hold in T.W. that the State's right to appeal was conditioned upon a showing or certification of the effect of the suppression order on the State's

9

case.

The District Court's conditioning of the State's right to appeal upon a showing that the suppression order substantially impaired or seriously impeded the continuation of the prosecution is contrary to the clear legislative intent of § 46-17-311(1), MCA (1989). As we stated in Kesler, the clear intent of that statute is to require a trial de novo on all appeals from justice court; a district court cannot assume appellate jurisdiction to review a justice court order suppressing evidence. Kesler, 220 Mont. at 245-46, 741 P.2d at 793-94.

Moreover, the legislature has not limited the State's right to appeal a justice court order suppressing evidence in the manner imposed by the District Court. The plain language of § 46-20-103(2)(e), MCA (1989), provides that the State may appeal from any court order the substantive effect of which results in suppressing evidence. To allow a court to formulate a standard for appealability of such an order would be to empower that court to determine the State's right to appeal, in derogation of a clear statutory right. Such a court action is necessary under circumstances such as those we addressed in Carney involving constitutional impediments. Absent such circumstances, however, it is not the role of the courts to insert into a statute that which has been omitted. Section 1-2-101, MCA. The proper procedure in this case was a trial de novo by the District Court.

The defendant presents two additional arguments in support of

the District Court's order which we will address briefly. First, the defendant argues that her motion to dismiss was "effectively a motion for summary judgment" under the Montana Rules of Civil Procedure and that the District Court's ruling was not appealable "until appeal of the final judgment in this case is had." This argument lacks merit. Title **46,** MCA, governs the procedure in the courts of Montana in all criminal proceedings except as otherwise specifically provided by law. Section **46-1-101,** MCA **(1989),** repealed (recodified as § **46-1-103,** MCA **(1991)).** The scope **of** the State's appeal is governed by § **46-20-103,** MCA **(1989).** The State is not required to await final judgment in order to exercise its right of appeal since double jeopardy considerations would preclude any appeal by the State in the event of an acquittal, and the State has no right to appeal following a conviction. See State v. Cool **(1977), 174** Mont. **99, 568** P.2d **567;** State v. Armstrong (1980), **189** Mont. **407, 616** P.2d **341.**

The defendant further argues that the Justice Court's ruling on the admissibility of the videotape was a discretionary evidentiary ruling which should not be overturned unless an abuse of discretion is shown. Whether the Justice Court abused its discretion is not at issue in this case. The District Court does not have appellate jurisdiction to review the Justice Court's ruling. Kesler, 228 Mont. 242, **741** P.2d **791.**

We also note that, in its order dismissing the State's appeal and remanding the case to the Justice Court, the District Court

11

directed that the time of appeal be charged to the State. It appears from the record before us that the issue of allocation of delay for speedy trial purposes was not raised in the motion to dismiss or argued by the parties. In light of our holding in this case, the District Court's allocation of delay to the State is vacated.

We hold that the District Court erred in remanding the case to the Justice Court for trial after the State had appealed from the Justice Court's order suppressing evidence. We remand the case to the District Court for trial de novo.

## II

Did the District Court err in ordering the fees of appointed defense counsel to be paid by the Montana Department of Fish, Wildlife and Parks?

In its order dismissing the State's appeal and remanding the case to the Justice Court, the District Court cited § 46-8-201, MCA (1989), as authority for ordering the Montana Department of Fish, Wildlife and Parks to pay the fees of appointed defense counsel. The record does not support the court's order.

Section 46-8-201(2)(b), MCA (1989), provides that when there has been an arrest by agents of the Department of Fish, Wildlife and Parks and the charge is brought and prosecuted by personnel of that State agency, the expense of court-appointed defense counsel must be borne by the agency; otherwise, the expense is chargeable

to the county in which the proceeding arose, the Department of Commerce, or both, as provided in § 3-5-901, MCA (1989). Here, the complaint and warrant of arrest indicate that the defendant was charged with misdemeanor assault and is being prosecuted by the Gallatin County Attorney's office. Although officials of the Department of Fish, Wildlife and Parks were at the scene of the incident, the record does not show any further involvement by department personnel. Accordingly, we hold that the District Court erred in ordering the Department of Fish, Wildlife and Parks to pay the fees of appointed defense counsel.

Reversed and remanded to the District Court for trial de novo.

_____
Justice

We concur:

_____
Chief Justice

_____

_____
Justices

13

Justice Terry N. Trieweiler dissenting.

I dissent from the opinion of the majority.

The majority decision repeatedly refers to the District Court's obligation pursuant to statute and the Montana Constitution to hear appeals from Justice Court *denovo*. However, before the District Court has an obligation to try appeals from the Justice Court *denovo*, it has a right to determine whether there was a proper statutory basis for appeal in the first place. In this case, I disagree with the majority's conclusion that there was a proper basis for appeal.

Section **46-17-311(2),** MCA, provides in relevant part that "{t]he prosecution may only appeal in the cases provided for in **46-20-103."** The only part of **§ 46-20-103,** MCA, which is applicable to this case is subsection (2)(e) which allows for an appeal by the State from an order which results in "suppressing evidence.''

In my opinion, there is a significant difference between the "suppression of evidence" and an evidentiary ruling which excludes material or information which is offered but is neither relevant to nor probative of the issues in the case.

In this case, on the day the trial was scheduled to begin in Justice Court, with the Justice Court ready to begin and the jury panel standing by, the prosecutor filed a pretrial motion seeking permission to play a video tape of a protest over Montana's bison hunt. The Justice of the Peace ruled that the defendant's conduct,

**14**

granted the defendant's motion *in limine* was to suppress evidence. If not, then the order does not become appealable simply because the State certified that its ability to prosecute is substantially impaired.

  **As** the Illinois Supreme Court has recognized, defining that which constitutes an order of suppression and determining whether a trial court's ruling falls within that definition is a difficult task. *(People v. Young* (1980), 82 Ill.2d 234, 45 Ill.Dec. 150, 412 N.E.2d 501.) In the context of Supreme Court Rule 604(a)(1), a distinction must be made between the suppression of evidence and the exclusion of evidence. This distinction is not merely semantic. Rule **604** was not intended to give the State the right to appeal from every ruling excluding evidence offered by the State. *(People v. Van De Rostyne* (1976), 63 Ill.2d 364, 368, 349 N.E.2d 16, 19.) It is suppression orders, as distinguished from evidentiary rulings, that are appealable under the rule. *People v. Flatt* (1980), 82 Ill.2d 250, 258, 45 Ill.Dec. 158, 162, 412 N.E.2d 509, 513.

  . . . .

  . . . **As** stated above, it is suppression orders, not evidentiary rulings, that are appealable under the rule. We find that the trial court's order which granted the defendant's motion *in limine* is not a suppression order as that term is used in Supreme Court Rule 604(a)(1) and, therefore, is not appealable.

*McCollins*, 468 N.E.2d at 197-98.

The effect of the majority's decision is to provide the State with the option of divesting justice courts of jurisdiction to try misdemeanor cases whenever the State chooses to do so. I do not believe that was the result intended by the legislature, and therefore, believe that the decision of the Illinois court is the better reasoned approach to defining the scope of appeal intended

16

under § 46-20-103, MCA.  I would affirm the District Court's dismissal of the State's appeal.

_____
                          Justice

I concur in the foregoing dissent of Justice Trieweiler.

_____
          Justice

February 12, 1992

## CERTIFICATE OF SERVICE

I hereby certify that the following order **was** sent by United States mail, prepaid, to the following named:


Hon. Marc Racicot, Attorney General
Justice Bldg.
Helena, MT  59620

A. Michael Salvagni, County Attorney
Gary Balaz, Deputy
615 S. 16th Ave., Rm. 100
Bozeman, MT  59715

Marcelle C. Quist
QUIST LAW OFFICE
1805 Landmark Center
Building 2, Suite 1A
Bozeman, MT  59715

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
        Deputy