No. 96-604

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997


STATE OF MONTANA,

Plaintiff, Appellant, and Cross-Respondent,

v.

WILLIAM STEPHEN STRIZICH,

Defendant, Respondent, and Cross-Appellant.



APPEAL FROM:   District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable Thomas M. McKittrick, Judge presiding.


COUNSEL OF RECORD:

For Appellant:

Hon. Joseph P. Mazurek, Attorney General;
Micheal S. Wellenstein, Assistant Attorney General;
Helena, Montana

David Gliko, Great Falls City Attorney; Great Falls, Montana

For Respondent:

Michael W. Cotter and Patricia O'Brien Cotter;
Cotter & Cotter, P.C.; Great Falls, Montana

Thomas E. Boland, Attorney at Law; Great Falls, Montana



Submitted  on Briefs: May 8, 1997

Decided:   November 25, 1997
Filed:

_____
Clerk

Justice Terry N. Trieweiler delivered the Opinion of the Court.

The defendant, William Strizich, was charged by complaint filed in the City Court of Great Falls with a first offense of driving under the influence of alcohol in violation of õ 61-8-401(1)(a), MCA.  He pled not guilty to the charge against him and his case was scheduled for trial.  Prior to trial in the City Court, the State moved in limine for an order to determine the admissibility of specified evidence.  When the City Court held the evidence inadmissible, the State appealed to the District Court for a trial de novo.  Prior to trial in the District Court, the State made the same pretrial motions and the District Court also excluded the proffered evidence.  The State appeals the District Court's pretrial order excluding evidence of statements made by Strizich to the investigating officer.  Strizich cross-appeals from the District Court's denial of his motion to dismiss for failure to provide him with a timely trial in compliance with õ 46-13-401(2), MCA.  We reverse the District Court's denial of Strizich's motion to dismiss and, therefore, decline to discuss the issue raised by the State on appeal.

We limit our consideration in this matter to the following issue:

Did the District Court err when it denied the defendant's motion to dismiss based on the State's failure to comply with õ 46-13-401(2), MCA, which required trial of the charges against the defendant within six months from the date that he entered his plea?

PROCEDURAL HISTORY

On November 4, 1995, the defendant, William Strizich, was stopped, arrested, and issued a notice to appear and complaint for driving under the influence of alcohol in violation of õ 61-8-401(1)(a), MCA.  He appeared in the City Court of Great Falls on November 6, 1995, and pled not guilty to that charge.

Strizich's case was set for trial in the City Court on February 29, 1996.  However, two weeks prior to trial, the State moved for a continuance of the trial based on the unavailability of one of its witnesses.  The trial was then continued to May 2, 1996.

On April 11, 1996, the State filed several motions in limine.  In one of those motions, the State asked the City Judge to determine prior to trial that statements made by Strizich after he was stopped on the night of his arrest were admissible as evidence.  In a second motion, the State asked the City Judge to determine prior to trial

whether results from a preliminary breath test (PBT), sometimes referred to in the record as a preliminary alcohol screening test (PAST), are admissible at trial. A PBT was administered to Strizich by the investigating officer, Christopher Hickman, by use of a portable device known as an Alco-Sensor III at the scene of his arrest on November 4.

On April 23, 1996, the City Judge, Nancy Luth, held that pursuant to õ 61-8-409(2), MCA, read in the context of Title 61, Chapter 8, part 4, the results of a PBT are intended to assist in the determination of probable cause only and not to be admitted "as substantive evidence in the State's case in chief." She therefore denied the State's motion to allow admission of these results as evidence. She issued no order regarding the State's other motion in limine because on April 24, 1996, the State filed a notice of appeal to the District Court of the Eighth Judicial District in Cascade County from the City Court's order denying its motion to admit evidence of PBT results. In its notice of appeal, the State referred to Judge Luth's order as an order "suppressing evidence" and based its appeal on õõ 46-17-311 and 46-20-103(2)(e), MCA.

On May 1, 1996, the State filed the same motions in limine in the District Court that it had filed in City Court. On May 10, Strizich moved the District Court to dismiss the charges against him pursuant to õ 46-13-401(2), MCA, for failure of the State to try him within six months from the date on which he entered his plea. The uncontroverted evidence in support of his motion was that he had done nothing to postpone his date of trial and that the State had no good cause for delay beyond six months, other than its interest in appealing the City Court's denial of its motion in limine.

In response to Strizich's motion to dismiss, the State argued that pursuant to õõ 46-17-311 and 46-20-103(2)(e), MCA, it had a right to appeal to the district court from a city court order "suppressing evidence"; that the City Court's order denying its motion in limine regarding PBT evidence was, in effect, an order suppressing evidence; and that, pursuant to this Court's decision in State v. Bullock (1995), 272 Mont. 361, 901 P.2d 61, since city court jurisdiction had been exhausted within six months, õ 46-13-401(2), MCA, had been satisfied.

On July 3, 1996, the District Court denied Strizich's motion to dismiss. Its order was based on its conclusion that the City Court's order denying the State's motion in limine was, in effect, an order to "suppress evidence" and, therefore, pursuant to our decision in Bullock, that õ 46-13-401(2), MCA, had been complied with.

On August 29, 1996, the District Court denied the State's motions in limine regarding Strizich's statements and evidence of PBT results.  It held that Strizich's statements were made after his arrest without the benefit of Miranda advice; it also held
that PBT results, when conducted in the field, were inherently unreliable and were intended neither by statute nor administrative rule for admission as substantive evidence
in the State's case.

On September 3, 1996, the State filed a notice of appeal from both the District Court's order regarding Strizich's admissions and the order regarding PBT evidence. However, the State has since abandoned its appeal from the District Court's exclusion of
PBT evidence.

On September 6, 1996, Strizich filed a cross-appeal from the District Court's order
dated July 3, 1996, which denied his motion to dismiss for failure to timely try him in
accordance with õ 46-13-401(2), MCA.

Because our disposition is based upon our conclusions regarding Strizich's right to a timely trial pursuant to statute, we need not discuss the remaining issue raised by the
State's appeal.  We confine our discussion to the following issue:

Did the District Court err when it denied the defendant's motion to dismiss based
on the State's failure to comply with õ 46-13-401(2), MCA, which required trial of the
charges against the defendant within six months from the date that he entered his plea?

## DISCUSSION

The district court's denial of a motion to dismiss is based on a legal conclusion
which we review to determine if it was correct.  State v. Bullock (1995), 272 Mont. 361,
368, 901 P.2d 61, 66.

Our analysis of the District Court's decision to deny Strizich's motion to dismiss
must necessarily begin with õ 46-13-401(2), MCA, which provides that:

After the entry of a plea upon a misdemeanor charge, the court, unless good cause to the contrary is shown, shall order the prosecution to be dismissed, with prejudice, if a defendant whose trial has not been postponed upon the defendant's motion is not brought to trial within 6 months.

In this case, Strizich's trial date in City Court was not postponed by any motion
made by Strizich, and the State admitted, at hearings before the District Court, that there
was no good cause for delay beyond the May 2, 1996, trial date, other than its desire to
appeal the City Court's decision that PBT results were not admissible evidence.

The District Court based its decision to deny Strizich's motion to dismiss on our

decision in Bullock. In that case, the defendants were charged in justice court with unlawfully killing and possessing a game animal. However, the justice court suppressed all of the State's evidence pertaining to one defendant on constitutional grounds, and dismissed the State's charges against the other defendant. The State then appealed to the district court for a trial de novo pursuant to õõ 46-17-311 and 46-20-103, MCA. When the defendants had not been tried in district court within six months from the date on which they entered their plea, they moved to dismiss pursuant to õ 46-13-401(2), MCA. That motion was denied. On appeal from that denial, this Court pointed out that in State v. Mantz (1994), 269 Mont. 135, 887 P.2d 251, we held that the statute requiring misdemeanors be tried within six months is inapplicable to those situations "in which the case comes from justice court to a trial de novo in district court." Mantz, 269 Mont. at 138, 887 P.2d at 253. In Bullock, we stated that:

> While this Court was not unanimous in its conclusion that õ 46-13-401(2), MCA, does not apply to misdemeanor charges appealed to the district court (see Mantz, Justices Trieweiler and Hunt dissenting), all members do concur that for purposes of applying that rule there is no basis for distinguishing between cases appealed after trial in the justice court and cases appealed from disposition in some other fashion in justice court. So long as the justice court jurisdiction is exhausted within six months by some action which authorizes appeal de novo to the district court, õ 46-13-401(2), MCA, has been satisfied.

Bullock, 272 Mont. at 369, 901 P.2d at 66-67 (emphasis added).

We noted that õ 46-20-103, MCA, authorizes the State to appeal from justice court to district court any order or judgment which has the effect of (a) dismissing a case, or (e) suppressing evidence. Bullock, 272 Mont. at 369, 901 P.2d at 66. For these reasons, we concluded that justice court jurisdiction had been exhausted in that case within six months by some action which authorized appeal de novo to the district court and, therefore, that the motion to dismiss on the basis of õ 46-13-401(2), MCA, had been properly denied. Bullock, 272 Mont. at 369, 901 P.2d at 67.

The issue in this case is, then, whether City Court jurisdiction was exhausted within six months "by some action which authorizes appeal de novo to the district court." Bullock, 272 Mont. at 369, 901 P.2d at 66-67. The State contends that that requirement was satisfied when the City Court denied its motion in limine to admit evidence of PBT results and, in effect, "suppressed evidence." The defendant contends that the term "suppressing evidence" is a term of art which does not apply to the exclusion of evidence

based on the rules of evidence and, therefore, that there was no action by the City Court
which authorized appeal de novo to the District Court.

The State's position finds support in several prior decisions of this Court. We conclude, however, that our own statutory framework and the better-reasoned authority from other jurisdictions support the position of the defendant.

In State v. Carney (1986), 219 Mont. 412, 714 P.2d 532, the defendant was being tried for driving under the influence of alcohol when, during the second day of trial, the district court sustained the defendant's objection to blood samples because the State had failed to establish a proper chain of custody. The State advised the district court of its desire to appeal that issue; the jury was dismissed; and a notice of appeal was filed. We held that based on double jeopardy considerations it was necessary to distinguish between appeals prior to the commencement of trial and appeals taken during the course of trial for purposes of applying õ 46-20-103, MCA. We then interpreted subsection (e) as follows:

We conclude that the order sustaining the objection to the admission of evidence did not constitute "suppressing evidence" as defined in Section 46-20-103, MCA. We hold that the District Court order ruling the blood samples inadmissible for failure to lay a proper foundation was not an appealable order.

Carney, 219 Mont. at 418, 714 P.2d at 536.

We then held that because there was no "manifest necessity" for the appeal, further trial of the defendant would constitute double jeopardy. Carney, 219 Mont. at 418, 714 P.2d at 536.

We next discussed the term "suppressing evidence" in State v. T.W. (1986), 220 Mont. 280, 715 P.2d 428. In that case, the State filed an interlocutory appeal from a district court order granting the defendant's motion in limine which precluded the State from using the defendant's youth court records as evidence and from offering evidence of prior offenses allegedly committed by the defendant while he was a minor. After asking the parties in that case to brief the issue of whether a pretrial order denying the State's motion in limine was an appealable order, as provided for by õ 46-20-103, MCA, we held that it was. We distinguished appeals from pretrial rulings from those taken during the course of trial. We held that:

There is an important distinction between interlocutory appeals on pre-trial rulings and those taken in the course of the trial. . . . No jeopardy attaches here, as the jury had not yet been sworn. Because there is no double jeopardy problem in this case the ruling is appealable.

T.W., 220 Mont. at 287, 715 P.2d at 432 (citation omitted).

     We followed T.W. in State v. Yarns (1992), 252 Mont. 45, 826 P.2d 543.
Although two members, in dissent, cautioned that
there is a significant difference between the "suppression of evidence" and
an evidentiary ruling which excludes material or information which is
offered but is neither relevant to nor probative of the issues in the case.

     . . . .

     The effect of the majority's decision is to provide the State with the
option of divesting justice courts of jurisdiction to try misdemeanor cases
whenever the State chooses to do so.

Yarns, 252 Mont. at 53-55, 826 P.2d at 548-49 (Trieweiler, J., and Hunt, J.,
dissenting).
     Since our decision in Yarns, several other jurisdictions have also considered
this
same issue.  In State v. Dwyer (Mo. Ct. App. 1992), 847 S.W.2d 102, the state
appealed
from the trial court's order in limine excluding prior acts of the defendant.
Missouri, like
Montana, permits the state by statute to appeal "from any order or judgment the
substantive effect of which results in . . . suppressing evidence."  Mo. Rev. Stat. õ
547.200.1(2) (1986).  However, the Court of Appeals for the Western District of
Missouri held that:
     The in limine order which is sought to be appealed here is not an
order "suppressing" evidence or having that substantial effect.  Section
547.200.1 was not intended to allow the appeal of this order in limine.
State v. Holzschuh, 670 S.W.2d 184, 185 (Mo.App.1984).

     The "suppression" of evidence is not the same thing as the exclusion
of evidence on the basis of some rule of evidence.  Suppression is a term
used for evidence which is not objectionable as violating any rule of
evidence, but which has been illegally obtained.  Fed.R.Crim.P. 12(b),
Section 542.296, RSMo 1986, Black's Law Dictionary ("motion to
suppress," "suppression of evidence") 914, 1291 (5th Ed.1979).  Evidence
may be highly relevant and admissible as against all objections based upon
the rules of evidence (i.e., hearsay, best evidence, parol evidence,
relevancy, privileged communications, and the like), but yet may be
suppressed because it was illegally obtained.  Id.

     . . . .

     The position advanced by the State would allow the State to appeal
any in limine order of the trial court which ruled inadmissible any evidence
which the State proposed to offer.  The State could thus by a single appeal,
or by repeated appeals, secure appellate rulings upon the admissibility of all
its evidence.  The statute has no such meaning.  It is intended to apply only
to those orders "suppressing" evidence; it should not be broadened by
intendment to cover in limine orders.  State v. Holzschuh, 670 S.W.2d 184
(Mo.App. 1984).

Dwyer, 847 S.W.2d at 103-04.

In State v. Shade (Nev. 1994), 867 P.2d 393, the state appealed from the district court's order in limine excluding evidence of the defendant's prior bad act on the basis that the evidence was irrelevant. The trial court's order was not based on any allegation that the evidence was illegally obtained. The state's appeal was based on a Nevada statute which permitted the state to appeal from district court orders which suppressed evidence. The Nevada Supreme Court noted that while there was no Nevada statute defining "motions to suppress," "suppression" had been defined by numerous courts. It cited decisions from appellate courts in Illinois, Colorado, Georgia, Missouri, North Dakota, and Virginia for the principle that "suppression" of evidence relates to evidence which would be otherwise admissible but was illegally obtained, as opposed to exclusion of evidence which is inadmissible based on the rules of evidence. Shade, 867 P.2d at 396.

The court in Shade held that:

"Motion to suppress" is a term of art which is defined as a request for the exclusion of evidence premised upon an allegation that the evidence was illegally obtained. Black's Law Dictionary 914 (5th ed. 1979) defines the term as follows:

> Device used to eliminate from the trial of a criminal case
> evidence which has been secured illegally, generally in violation of
> the Fourth Amendment (search and seizure), the Fifth Amendment
> (privilege against self incrimination), or the Sixth Amendment (right
> to assistance of counsel, right of confrontation, etc.), of [the] U.S.
> Constitution.

In this case, the district court excluded evidence for evidentiary reasons. The district court did not suppress evidence. The right to appeal is statutory. Where no statute or rule provides for an appeal, no right to appeal exists. There is no statute or rule which provides for an appeal from an order of the district court granting a motion in limine to exclude evidence.

Shade, 867 P.2d at 396 (citation omitted).

In State v. Howard (Tex. Ct. App. 1995), 908 S.W.2d 602, the state appealed from an interlocutory trial court order which had been entitled "Order Suppressing Evidence" but which, in fact, excluded evidence of statements by co-defendants which implicated the defendant. The statements were not excluded based on the Sixth Amendment grounds claimed by the defendant, but instead on Texas Rules of Criminal Evidence. The Court of Appeals found that distinction significant. It held that while the Texas Code of Criminal Procedure allowed the state to appeal from orders which grant motions to suppress, "the legislature did not intend to create an avenue by which the state could secure interlocutory review of general evidentiary rulings." Howard, 908 S.W.2d

at 604. The court held that:
[T]he phrases "motion to suppress" or "suppress evidence" have developed
unique meanings in our criminal jurisprudence. Indeed, they are terms of
art which contemplate more than the simple exclusion of evidence pursuant
to the general rules of evidence. State v. Kaiser, 822 S.W.2d at 700. As
discussed in Kaiser and in decisions issued by neighboring jurisdictions, a
motion to suppress presupposes that the evidence was illegally obtained.
We opt, as did the Kaiser court, to construe the wording of article
44.01(a)(5) to comport with, not contradict, its technical meaning.

Additionally, in our system of jurisprudence, we note that it is not
the function of appellate courts to sit in "instant replay" of the general
pretrial decisions made by a trial judge. He is entitled to control his
dockets and dispense justice without undue interference from appellate
bodies.

Howard, 908 S.W.2d at 604-05 (citations omitted).
For those reasons, the Texas Court held that it was without jurisdiction to hear the
state's appeal, and it was dismissed.
These decisions are consistent with the manner in which "suppression of evidence"
is discussed in our statutory framework. Both of this State's statutory references to the
suppression of evidence relate to evidence which would otherwise be admissible had it
not been illegally obtained. Section 46-13-301, MCA, permits the suppression of
confessions which were made involuntarily. Section 46-13-302, MCA, permits the
suppression of evidence gathered as the result of an unlawful search or seizure.
To hold that this Court has jurisdiction to consider appeals from orders which
simply exclude evidence based on the rules of evidence would require that this Court
micro-manage the discretionary functions of trial courts. Just as importantly, to hold that
district courts have jurisdiction to entertain appeals from justice court or city court based
upon pretrial determinations of the admissibility of all evidence, would allow the State
to avoid justice court or city court jurisdiction altogether anytime it decides it would be
tactically advantageous to do so. That certainly was not the intent of the Legislature
when it authorized appeals based on the "suppression of evidence."
We therefore conclude that orders "suppressing evidence" are orders which exclude
evidence on the grounds that the evidence has been illegally obtained. They do not
include pretrial orders which exclude evidence based on Rules of Evidence, such as
relevancy, probative value, or statutory inadmissibility. To the extent that our decisions
in State v. T.W. (1986), 220 Mont. 280, 715 P.2d 428, and State v. Yarns (1992), 252
Mont. 45, 826 P.2d 543, are inconsistent with this holding, they are reversed.
We further conclude that the City Court's order dated April 23, 1996, which
excluded PBT results, and which was the basis of the State's appeal to the District Court,

was not an order "suppressing evidence." It was, in effect, an order determining that
PBT results are not substantive evidence at all. The City Court's and the District Court's
decisions in that regard were correctly based on the statutory scheme pertaining to PBT's,
the legislative history of those statutes, and the administrative rules enacted to enforce
those statutes.

Title 61, Chapter 8, part 4, Montana Code Annotated, relating to the offense of
driving under the influence of alcohol, provides for two types of tests to measure the
presence of alcohol in a person's body after being stopped based on a suspicion of driving
under the influence of alcohol. Section 61-8-402, MCA, provides for tests of a person's
blood, breath, or urine for the purpose of measuring the presence of alcohol after that
person has been arrested. Section 61-8-404, MCA, provides that test results obtained
pursuant to the post-arrest test are admissible as evidence at a DUI trial. That statute
specifically refers to the foundation for admission of evidence obtained pursuant to õ 61-
8-402, MCA.

Section 61-8-409, MCA, on the other hand, provides for a preliminary alcohol
screening test (previously referred to as a PBT) of a person's breath for the purpose of
"estimating the person's alcohol concentration, upon the request of a peace officer who
has a particularized suspicion that the person was driving or in actual physical control of
a vehicle . . . while under the influence of alcohol." (Emphasis added.) In other words,
the PBT is intended for use prior to an actual arrest for the limited purpose of
"estimating" the alcohol concentration. Subparagraph (2) specifically provides that: "The
results of a screening test may be used for determining whether probable cause exists to
believe a person has violated 61-8-401, 61-8-406, or 61-8-410." Section 61-8-409(2),
MCA (1995). There is no suggestion in õ 61-8-409, MCA, that the results of a PBT are
admissible as substantive evidence to establish a person's guilt. Neither did those who
spoke in support of Senate Bill 316 in the 1995 Legislative Session suggest that the new
statute providing for preliminary blood testing would produce substantive evidence of a
person's guilt. It was only referred to by the statute's proponents as assistance to an
investigating officer in the determination of whether to proceed to an arrest. Hearings
on S.B. 316 Before the Montana Senate 1995 Legislature Judiciary Comm. at 5-6, 54th
Legislature Regular Session (1995) (describing testimony of Peter Funk, former

Assistant
Attorney General, involved in drafting Senate Bill 316).

Finally, those rules adopted by the Forensic Science Division of the Department of Justice in 1995 referred to preliminary breath testing devices as "associated equipment," as opposed to a "breath analysis instrument," and define it as follows:

[A]ny approved device which is designed to detect and verify the presence of alcohol or provide an estimated value of alcohol concentration. Analyses from this type of device, e.g., a preliminary breath tester, are to be considered as probable cause evidence only.

Rule 23.4.201(7)(b), ARM (emphasis added).

There are reasons apparent from the District Court record for the legislative decision to allow use of PBT results for probable cause purposes only.  Norm Fort, a criminalist employed by Ventura County in California, who has conducted tests of the Alco-Sensor III, acknowledged that while the instrument is reliable during controlled studies, there are variations when used under field conditions based on physiological, instrumental, and operator-induced factors.

Philip Lively, Director of the Breath Analysis Program at the Division of Forensic Science at the Montana Department of Justice, testified similarly.  He gave the following answer to the following question:

Q.   The point is in a field setting there are a great many variances, depending upon not only environmental conditions but on the testing procedures and accuracies of the officer; isn't that true?

A.   That is true.

For these reasons, we conclude that results of a preliminary breath test (statutorily identified as preliminary alcohol screening test) are not substantive evidence of the amount of alcohol present in a person's body, but instead are an "estimate" of alcohol concentration for the purpose of establishing probable cause to believe that a person is under the influence of alcohol prior to making an arrest for violation of §§ 61-8-401, -405, or -410, MCA.  For this reason, we conclude that the City Court's order excluding PBT results at the City Court trial of the defendant, William Strizich, was not an order to "suppress evidence."

Because the City Court did not enter an order to "suppress evidence" in this matter, there was no statutory basis pursuant to § 46-20-103(2)(e), MCA, for appeal to the District Court.  Therefore, we conclude that City Court jurisdiction was not exhausted within six months by some action which authorized appeal to the District Court, and that § 46-13-401(2), MCA, has not been satisfied.

For these reasons, we conclude that in the language of § 46-13-401(2), MCA, the

prosecution of the defendant "shall . . . be dismissed with prejudice."

Because of Strizich's official position, this case has received more public attention than is normally given to a first charge of driving under the influence of alcohol. Most members of the public, and presumably the defendant, would prefer that the charge be resolved on its merits. However, the law is clear. Absent good cause or efforts by the defendant to delay trial, a misdemeanor charge must be brought to trial within six months from the entry of the defendant's plea, or it must be dismissed with prejudice. The defendant in this case is as entitled to the protection of that law as if he had no official position.

The State had numerous opportunities to comply with the controlling statute. Strizich denied his guilt on November 6, 1995, and trial was immediately scheduled for February 29, 1996. The State sought a continuance on the basis that its witness, a full-time employee of the State, could not be present for trial on that date. Strizich objected to the continuance but it was granted. A second trial was scheduled for May 2, 1996-- still within the time allowed. The State, however, receiving no positive response to its efforts to disqualify the City Judge, divested the City Court of an opportunity to try the case on May 2 by appealing to the District Court from the City Court's denial of its motion to admit evidence which was clearly inadmissible. The State, in other words, made it impossible for the City Court to comply with the law which protects misdemeanor defendants from untimely trials and, due to the State's delay, the charges must be dismissed.

We reverse the order of the District Court which denied the defendant's motion to dismiss and remand to the District Court for entry of judgment consistent with this opinion.

/S/   TERRY N. TRIEWEILER

We Concur:

/S/   J. A.  TURNAGE
/S/   WILLIAM E. HUNT, SR.
/S/   JAMES C. NELSON
/S/   W. WILLIAM LEAPHART


Justice James C. Nelson specially concurs.

I concur in our opinion.  It is disheartening, however, that we have found it necessary to include at the end of our legal discussion a statement of the obvious-- that just because Bill Strizich is a public figure, he is entitled to rely on the protection

of the law
the same as any other citizen.  Even that will likely not forestall the criticism from those
who view our court system as being preoccupied with legal niceties to the exclusion of
what they believe is the only proper role of the judiciary--i.e. "to take a bite outtþa crime"
and "to lock 'em up and throw away the key."  Nonetheless, before the faultfinders swell
up in righteous indignation,  they at least should consider certain aspects of this case that
are not brought out in the opinion proper, since it was unnecessary to do so in our
discussion of the dispositive legal issue.

One cannot review the entire record in this case without coming away with a
feeling of distaste.  In ruling on various of the City's pretrial motions, the District Judge
entered a number of findings of fact based on evidence taken from the parties and after
having heard oral argument.  While these do not do credit to the manifest frustration of
the District Judge with the City as revealed in the transcripts, even these paint a less than
complimentary picture of the police and the prosecution.

As to the initial investigation and stop of Mr. Strizich, Judge McKittrick found,
in pertinent part, as follows:

1.  On November 4, 1995, William Strizich was arrested by Great Falls Police Officer Christopher Hickman and cited with violation of 61-8-401, M.C.A., for operating a motor vehicle while under the influence of alcohol.

2.  Approximately 20 minutes before he arrested Strizich, Hickman observed Strizich standing by a roadway in a Great Falls residential area with some other individuals.  Hickman spoke with Strizich, and Strizich advised him that everything was fine, and that they were just trying to get a friend of Strizich's indoors.  Hickman stated that he could understand Strizich clearly when he spoke with him.

3.  After Officer Hickman left Strizich by the side of the roadway, he drove to a location two blocks away, and ran the license plate of the vehicle near which Strizich had been standing.  He learned that the vehicle was registered to U.S. Marshal William Strizich and his wife.

4.  Officer Hickman admitted "laying in wait" for Strizich, testifying that he waited in his patrol car with the intent that if Strizich got into his vehicle and drove it, he would arrest him.

5.   While he waited for Strizich to operate his vehicle, Hickman called Great Falls Police Sergeant Greg Church on his cellular phone and asked him to come to the location where Hickman was parked waiting for Strizich.  Hickman told Church what route to take and to keep his headlights off so as not to alert Strizich.  When Church arrived, Hickman

told Church he had "a big fish DUI."

6.   After waiting for 15 to 20 minutes, Hickman observed Strizich operating his vehicle.  He followed the Strizich vehicle for approximately 7 blocks, before stopping him and eventually arresting him for DUI.

7.   Hickman testified that during the entire period of time that he followed Strizich's vehicle -- for approximately 7 blocks, through two traffic controlled intersections, and after two left-hand turns -- Strizich made no unsafe driving maneuver.

8.   Hickman testified that Strizich did not weave, did not exceed the speed limit, did not cross the center line, did not make excessively wide turns, did not brake suddenly, did not brake at green lights, did not fail to stop at a stop sign, and did not fail to yield the right of way.  Hickman has been trained in night-time DUI detection, and these are the cues he looks for in determining whether a person is driving under the influence of alcohol.

9.   Hickman stopped Strizich in an alley, had a conversation with him, asked him to perform field maneuvers, and asked him to take a Preliminary Breath Test (PBT).  Strizich complied with these requests.

In denying the City's motion to preclude the defense from presenting evidence to the jury of prior "bad acts" of the police, Judge McKittrick concluded that such evidence was relevant to the issue of the police officer's credibility.  The court ruled:

D.   In light of the admission that Officer Hickman was "laying in wait" for Strizich, and referred to him as a "big fish DUI" before the arrest was made, the jury could infer that Hickman had a bias against Strizich prior to the arrest, and that he now has an interest in the outcome of the litigation.  Under these circumstances, evidence of Hickman's previous confrontations with the public and evidence of previous violations by Hickman of the civil rights of members of the public[] are and shall be admissible into evidence in this case, providing the Defendant can show relevancy and establishes a proper foundation.

So much for the "particularized suspicion" which was presumably the basis on which Mr. Strizich was initially stopped.

As for the attempt by the prosecution to place before the jury evidence of Mr. Strizich's PBT results, the court's decision was equally critical.  At the outset, it is important to keep in mind that, as our opinion points out, the issue of the admissibility of the PBT results as substantive evidence had been for all practical purposes decided by the legislature and the Forensic Science Division of the Department of Justice against the prosecution long before the City decided to make this an issue in Mr. Strizich's case.
It was the City's attempt to get this evidence into the trial that delayed the trial

date; that necessitated the City hiring an expert criminalist from California; that necessitated filing numerous briefs; that necessitated a hearing in City Court; that, not surprisingly, resulted in the ruling from City Judge Luth holding the evidence to be inadmissible; that enabled the prosecution to appeal the "suppression" of the evidence to the District Court and, thus, get the case away from a judge that the City, three months after the arraignment and three weeks prior to the original date set for trial, had unsuccessfully tried to disqualify; that necessitated further briefing and a hearing in District Court; that, again not surprisingly, precipitated a ruling by the District Judge holding the evidence inadmissible; and that ultimately was the key factor in the City's losing its entire case on appeal to this Court. In truth, this was a non-issue, unwinnable from the start.

The legislature and Department of Justice had already determined that PBT results were not sufficiently reliable to be considered substantive evidence. This was confirmed by the City's California expert who, according to Judge McKittrick, acknowledged that the PBT can be influenced by a broad range of factors. According to the court, the City, in fact, conceded that "there is a whole laundry list" of things that could go amiss during the field use of a PBT device. The court found that the California expert gave no ultimate opinion on the reliability of the PBT, because the prosecution failed to lay a proper and sufficient foundation for such an opinion. Moreover, another prosecution witness--the very individual who authored the Department of Justice rule referred to in our opinion--testified that, even when properly used and correctly calibrated, a PBT device can have a margin of error of plus or minus 10 percent and that he was aware of no case wherein the results of a PBT had been introduced into evidence for any purpose other than establishing probable cause. Finally, the prosecutor conceded to the District Judge that the City could have gone forward with Mr. Strizich's trial in City Court on its scheduled date (within the required 6 months) had it not chosen to make an issue out of the admissibility of the PBT evidence--an issue that was virtually dead on arrival to begin with. And, the final irony? This "case-busting" issue that the City pursued through the City Court and the District Court with expert witnesses, was eventually abandoned and was not even appealed to this Court.

So here we are. The case was not resolved on the merits and never will be; a citizen was targeted for and then subjected to a DUI arrest more for who he was than

what he did; there has likely been a substantial amount of taxpayer money spent on a prosecution that went absolutely nowhere; instead of the speedy trial he wanted, demanded and was constitutionally entitled to, Mr. Strizich has been twisting in the breeze for over two years through three different courts (at his expense, not the taxpayers, by the way); and this Court has contributed yet another opinion to this State's criminal jurisprudence.  And for what?  So the City could catch and fry a Big Fish.

The only good news in this shameful debacle is that when the hand-wringers gather to assess the blame for this one, at least they won't have to look very far from home.

/S/   JAMES C. NELSON