JUSTICE NELSON
delivered the Opinion of the Court.
¶ 1 Phillip Kleinsasser appeals from the Findings of Fact, Conclusions of Law and Order entered by the District Court for the Eighth Judicial District, Cascade County, denying his petition to reinstate his driver’s license. We reverse.
¶2 We address the following issue on appeal: Whether the District Court erred in concluding that Officer Leasure had objective data from which he could form a particularized suspicion that Kleinsasser or an occupant of his vehicle was engaged in wrongdoing thus justifying an investigative stop.
Factual and Procedural Background
¶3 Many of the facts in this case are undisputed. On November 16, 1999, at approximately 9:48 p.m., Kleinsasser’s vehicle was parallel parked in a legal manner, with its lights on, off the right side of the Vaughan Frontage Road outside Great Falls, Montana. Cascade County Sheriffs Deputy Troy Leasure, accompanied by Reserve Sheriffs Deputy Travis Palmer, was returning to Great Falls from Sun Prairie in his patrol car. Officers Leasure and Palmer came upon Kleinsasser’s vehicle from behind. As they passed the vehicle, the officers observed a man standing beside the passenger door of the vehicle on the side furthest from the road. The man appeared to be urinating. Officer Palmer later testified that he observed a stream of fluid for a brief second, but the individual had taken steps so as not to expose himself to passers-by.
¶4 Officer Leasure continued on for about one-half mile before deciding to turn around to warn the individual about the impropriety of his conduct or, as Officer Leasure later testified, “to give him a good tongue lashing.” Upon reaching the vehicle, there was no longer anyone standing near it. The officers observed that Kleinsasser was seated in the driver’s seat of the vehicle and that he was making a call *327 on his cellular phone. They also observed that an individual was seated in the front passenger seat of the vehicle and another individual was lying down on the back seat.
¶5 When Kleinsasser rolled down his driver’s side window to speak to Officer Leasure, Officer Leasure noticed the odor of alcohol emanating from inside the vehicle. Officer Leasure questioned Kleinsasser and the other two men in the vehicle about the identity of the man who had been standing outside. All three denied standing by the vehicle and also denied knowing who had been doing so.
¶6 After further conversation, Officer Leasure asked Kleinsasser to exit the vehicle and observed that Kleinsasser had a hard time keeping his balance. Officer Leasure had Kleinsasser perform field sobriety tests, which Kleinsasser failed. Officer Leasure requested Kleinsasser take a preliminary breath test, which Kleinsasser refused. Consequently, Officer Leasure arrested Kleinsasser for driving under the influence of alcohol. After the officers transported Kleinsasser to the detention center, Kleinsasser once again refused to provide a breath sample and his driver’s license was seized and suspended.
¶7 Kleinsasser challenged the license suspension pursuant to § 61-8-403, MCA, asserting that Officer Leasure illegally seized his license. Discovery ensued and the depositions of Officers Leasure and Palmer were filed. Officers Leasure and Palmer also testified at the June 30, 2000 hearing on Kleinsasser’s petition challenging the suspension. Thereafter, the District Court entered its Findings of Fact, Conclusions of Law and Order denying Kleinsasser’s petition. Kleinsasser appeals.
Discussion
¶8 Whether the District Court erred in concluding that Officer Leasure had objective data from which he could form a particularized suspicion that Kleinsasser or an occupant of his vehicle was engaged in wrongdoing thus justifying an investigative stop.
¶9 We review a district court’s findings of fact on the denial of a petition for reinstatement of a driver’s license to determine whether those findings are clearly erroneous. Anderson v. State, Dept. of Justice (1996), 275 Mont. 259, 262, 912 P.2d 212, 214 (citing Bauer v. State (1996), 275 Mont. 119, 122, 910 P.2d 886, 888). We then review the court’s conclusions of law to determine whether they are correct. Anderson, 275 Mont. at 262, 912 P.2d at 214.
¶10 “Because a presumption of correctness attaches to the State’s act of suspending or revoking a driver’s license, the driver bears the burden of proving that the suspension or revocation of a driver’s *328 license was improper.” Hulse v. State, Dept. of Justice, 1998 MT 108, ¶ 14, 289 Mont. 1, ¶ 14, 961 P.2d 75, ¶ 14 (citing Jess v. State Dept. of Justice (1992), 255 Mont. 254, 259-60, 841 P.2d 1137, 1140 overruled on other grounds by Bush v. State, Dept. of Justice, 1998 MT 270, 291 Mont. 359, 968 P.2d 716). Furthermore, a district court may consider only a limited number of issues in a driver’s license reinstatement proceeding. Section 61-8-403(4)(a) & (b), MCA. Insofar as is relevant in the present case, the only issue under consideration was whether Officer Leasure “had reasonable grounds to believe” that Kleinsasser “had been driving or was in actual physical control of a vehicle upon ways of this state open to the public while under the influence of alcohol, drugs, or a combination of the two.” Section 61-8-403(4)(a)(i), MCA.
¶11 The “reasonable grounds” requirement contained in § 61-8-403(4)(a)(i), MCA, is the equivalent of “particularized suspicion” as defined in § 46-5-401, MCA. Hulse, ¶ 12 (citing Seyferth v. State, Dept. of Justice (1996), 277 Mont. 377, 384, 922 P.2d 494, 498; Anderson, 275 Mont. at 263, 912 P.2d at 214). Section 46-5-401, MCA, provides:
Investigative stop. In order to obtain or verify an account of the person’s presence or conduct orto determine whether to arrest the person, a peace officer may stop any person or vehicle that is observed in circumstances that create a particularized suspicion that the person or occupant of the vehicle has committed, is committing, or is about to commit an offense. [Emphasis added.]
¶12 This statute was amended in 1991 to reflect our holding in State v. Gopher (1981), 193 Mont. 189, 631 P.2d 293, wherein we adopted the two-part test enunciated by the United States Supreme Court in United States v. Cortez (1981), 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621, to evaluate whether a law enforcement officer has sufficient cause or a “particularized suspicion” to stop a person. We held in Gopher that in asserting that a law enforcement officer had the particularized suspicion to make an investigatory stop, the State has the burden to show: (1) objective data from which an experienced officer can make certain inferences; and (2) a resulting suspicion that the occupant of a certain vehicle is or has been engaged in wrongdoing or was a witness to criminal activity. Gopher, 193 Mont. at 194, 631 P.2d at 296.
¶13 A determination of whether particularized suspicion exists is a question of fact dependent on the totality of the circumstances. Hulse, ¶ 12 (citing Anderson, 275 Mont. at 263, 912 P.2d at 214; State v. Reynolds (1995), 272 Mont. 46, 50, 899 P.2d 540, 542-43). “In evaluating the totality of the circumstances, a court should consider *329 the quantity, or content, and quality, or degree of reliability, of the information available to the officer.” State v. Pratt (1997), 286 Mont. 156, 161, 951 P.2d 37, 40 (citing Alabama v. White (1990), 496 U.S. 325, 330, 110 S.Ct. 2412, 2416, 110 L.Ed.2d 301). When the totality of the circumstances does not support a particularized suspicion, the investigatory stop is not justified. Reynolds, 272 Mont. at 50, 899 P.2d at 543.
¶14 Kleinsasser asserts that an investigative stop of his vehicle was not justified in this case because the officers lacked sufficient data from which they could conclude that the person they observed on the side of the road was an occupant of Kleinsasser’s vehicle. Both officers testified that they did not observe anyone entering or exiting Kleinsasser’s vehicle at any time. The officers merely observed that there was an individual on the side of the road when they originally proceeded past Kleinsasser’s vehicle and that upon returning to that location, the individual that the officers had observed earlier was no longer there. The officers assumed that this individual was an occupant of Kleinsasser’s vehicle, yet they were unable to determine which of the occupants of the vehicle, if any, was the individual they had observed on the side of the road.
¶15 Kleinsasser also argues that to justify an investigative stop under § 46-5-401, MCA, the facts must demonstrate that the observed behavior was a violation of the laws of Montana. To that end, the State argues that the observed behavior was a violation of § 45-8-101, MCA, the statute defining disorderly conduct. Section 45-8-101, MCA, provides, in pertinent part, as follows:
Disorderly conduct. (1) A person commits the offense of disorderly conduct if he knowingly disturbs the peace by:
(i) creating a hazardous or physically offensive condition by any act that serves no legitimate purpose;... [Emphasis added.]
¶16 First, we agree with Kleinsasser’s assertion that this behavior did not create a hazardous condition. Despite the State’s allegation that a driver passing by the area may have been distracted by the activities of the individual on the roadside, any possible distraction would be minimal given the time of night and the steps taken by the individual to conceal himself.
¶17 Second, we disagree with the State’s assertion that the act served no legitimate purpose. It is hard to imagine any act which serves a more legitimate purpose than to have to answer nature’s call. Unfortunately, it sometimes happens that that call comes at a time *330 when we are far removed from the proper facilities. Officer Leasure himself testified that he had, on occasion, been placed in the same position and that he was forced to act in the same manner as the individual here.
¶18 Third, while the act may be physically offensive to many, Officer Leasure testified that where the act is performed would play a large part in whether or not it was illegal. The State points to two cases wherein the individuals involved were cited for disorderly conduct for urinating in public. In the first case, the individual was cited for urinating in the 1800 block of Tenth Avenue South within the Great Falls city limits, near a busy, well-lighted street. In the second case, the individual was cited for urinating on a bench in the Cascade County Adult Detention Center.
¶19 The Criminal Law Commission (CLC) comments to § 45-8-101, MCA, provide the following analysis of the conduct comprising a violation of this statute:
The crime of disorderly conduct appears to be directed at curtailing that kind of behavior which disrupts and disturbs the peace and quiet of the community by various kinds of annoyances. These acts standing alone may not be criminal under other categories such as theft, or assault and battery, or libel, etc. The difficulty is in defining the conduct which falls within these objectives, for a given act under some circumstances is not objectionable, while under others it is. Thus sounding a horn at a carnival is not objectionable. But sounding it at midnight in a residential section might be.
The intent of the provision is to use somewhat broad, general terms to establish a foundation for the offense and leave the application to the facts of a particular case. Two important qualifications are specified in making the application, however. First, the offender must knowingly make a disturbance of the enumerated kind, and second, the behavior must disturb “others.” It is not sufficient that a single person or a very few persons have grounds for complaint. [Emphasis added.]
Unlike the facts in the case before us on appeal, in both of the cases relied upon by the State the behavior was done in very public places and could conceivably be considered to have disturbed “others.”
¶20 Indeed, our review of the CLC comments to § 45-8-101, MCA, leads us to conclude that when a Big Sky motorist is faced with the burning question: “To pee, or not to pee,” the answer must depend upon the place, time of day, traffic, and other circumstances. The *331 wrong answer-dictated though it may be by a need subordinate only to drawing one’s next breath-may turn a legitimate act into a criminal one.
¶21 In the present case, the incident occurred in the dark of the night, in a rural location where, as Officer Palmer testified, there were no overhead lights of any kind and there was no other traffic around at the time. Moreover, there was no evidence that the behavior disturbed anyone other than Officers Leasure and Palmer, and neither officer was so disturbed by the behavior that they considered giving the individual a citation. In fact, Officer Palmer testified that he observed nothing of an illegal nature that required immediate attention and Officer Leasure testified that, even though he turned his patrol car around to return to the scene, he had no intention to investigate any illegal activity.
¶22 Therefore, we conclude that the District Court’s determination that the initial stop of Kleinsasser’s vehicle was justified by particular suspicion is not supported by substantial evidence and is clearly erroneous. Because Officer Leasure did not have particularized suspicion to justify an investigative stop of Kleinsasser’s vehicle, the subsequent seizure of Kleinsasser’s driver’s license was invalid. Thus, we hold that the District Court erred in denying Kleinsasser’s petition to reinstate his driver’s license.
¶23 Reversed.
JUSTICES COTTER, LEAPHART, REGNIER, TRIEWEILER and RICE concur.