No. 00-359

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 63


STATE OF MONTANA,

        Plaintiff and Respondent,

   v.

KADE GEORGE KRAUSE,

        Defendant and Appellant.



APPEAL FROM:    District Court of the Fifth Judicial District,
                     In and for the County of Beaverhead,
                     The Honorable Robert J. Boyd, Judge presiding.



COUNSEL OF RECORD:

      For Appellant:

        Wendy Holton, Helena, Montana

      For Respondent:

        Hon. Joseph P. Mazurek, Montana Attorney General, Ilka Becker,
Assistant          Montana Attorney General, Helena, Montana; Thomas R. Scott,
Beaverhead      County Attorney, Dillon, Montana



                            Submitted on Briefs:  February 8, 2001

                                   Decided:  April 2, 2002

Filed:

            _____
                        Clerk

Justice James C. Nelson delivered the Opinion of the Court.

1¶     Kade George Krause appeals an order of the District Court for the Fifth Judicial District, Beaverhead County, denying Krause's petition to reinstate his driver's license. We affirm in part, reverse in part, and remand for further proceedings consistent with this Opinion.

2¶     Krause raises three issues on appeal which we have restated for clarity as follows:

3¶     1.  Whether the District Court erred in its determination that a private driveway is a way of this State open to the public.

4¶     2.   Whether the District Court erred in denying Krause's motion to exclude statements he made in response to questioning by Officer Heinecke before Officer Heinecke identified himself as a law enforcement officer.

5¶     3.  Whether the District Court erred in denying Krause's motion to exclude the results of Krause's blood test.

## Factual and Procedural Background

6¶     On October 27, 1999, at about 11:40 p.m., Mark and Dee Boka's daughter woke them to tell them that someone was parked in their driveway and that the person had been there for ten or fifteen minutes. When the Bokas got up to investigate, they saw a vehicle in their driveway with its headlights shining on their house. Mark Boka testified that they did not know whose vehicle it was and that they had not given anyone permission to park there.

7¶     Dee Boka contacted the Beaverhead County Sheriff's Office and reported a suspicious person on their property. She reported that a vehicle was parked in their

2

driveway with its engine running and its headlights shining on their house.

¶8 Officer Jake Heinecke was dispatched to the Boka residence to investigate. When Officer Heinecke arrived at the residence shortly before midnight, he noticed a newer model black GMC truck parked in the driveway which was just off of Highway 278. Officer Heinecke got out of his vehicle and approached the driver's side door. As he did so, he noticed that a man, who appeared to be asleep, was lying on the seat of the truck with his feet resting on the floor under the steering wheel. Two dogs were also inside the cab of the truck. The truck was running and the driver's side window was rolled down approximately one quarter of the way.

¶9 Officer Heinecke knocked on the driver's side window in an attempt to wake the man. The man did not respond to the first knock but, after the second knock, he sat up and looked around. Officer Heinecke recognized the man as Kade George Krause. Krause rolled down the window at Officer Heinecke's request and, when he did so, Officer Heinecke detected the odor of alcohol on Krause's breath and he observed that Krause's eyes were bloodshot and glassy. Officer Heinecke asked Krause for his driver's license, registration and proof of insurance. Krause produced those items, but Officer Heinecke noticed that Krause had some difficulty getting his driver's license out of his wallet.

¶10 Officer Heinecke began to question Krause about where he'd been, where he was going and whether he'd had anything to drink. Krause responded that he had had "a few

3

beers" and that he'd been at "the old Watering Hole" in Dillon. As Krause spoke, Officer Heinecke observed that his speech was slow and that he slurred his words.

11¶ Officer Heinecke asked Krause to step out of the truck and Krause complied, but, as he did so Krause's two dogs also jumped out. Krause attempted to whistle for the dogs to return them to the truck, but finding himself unable to whistle, Krause resorted to calling the dogs. Thereafter, Officer Heinecke had Krause perform the Horizontal Gaze Nystagmus (HGN) test. The test results were consistent with Officer Heinecke's belief that Krause was under the influence of alcohol. Hence, Officer Heinecke took Krause into custody and advised him that he was under arrest for driving under the influence (DUI).

12¶ Before transporting Krause to the Sheriff's office, Officer Heinecke asked the Bokas for permission to leave Krause's truck and the dogs on their property and they consented. Mark Boka drove the truck to the back of his property with Krause in the truck alongside him so that Mark would be safe from the dogs. Mark later testified that it appeared to him that Krause was intoxicated.

13¶ At the station, Officer Heinecke had Krause perform another HGN test and the walk-and-turn test, both of which indicated that Krause was under the influence. Krause declined to submit to a breathalyser test, thus his driver's license was seized and suspended pursuant to § 61-8-402(4), MCA. After the booking process was completed,

Officer Heinecke allowed Krause to call his family.

14¶ A short while after Krause's father came to pick him up, Paul Craft, Dillon Assistant Police Chief, was making a routine patrol of Barrett Memorial Hospital when he saw Krause and his father enter the building. Aware that Krause had been charged with DUI earlier that night, Craft reported his observation to Officer Heinecke. At the hospital, Krause requested a blood alcohol test. The State subsequently obtained the results of the blood test by investigative subpoena.

15¶ On November 29, 1999, Krause petitioned the District Court for reinstatement of his driver's license. A hearing on his petition was held on February 11, 2000. At the hearing, statements made by Krause prior to his arrest were admitted over his objection. Additionally, the results of the blood alcohol test which Krause had taken after his release from jail were also admitted over his objection.

16¶ On March 10, 2000, the District Court issued its Findings of Fact, Conclusions of Law and Order denying Krause's petition for reinstatement. Krause appeals from the District Court's order.

### Standard of Review

17¶ We review a district court's findings of fact on the denial of a petition for reinstatement of a driver's license to determine whether those findings are clearly erroneous. *Kleinsasser v. State*, 2002 MT 36, ¶ 9, 308 Mont. 325, ¶ 9, ___ P.3d ___, ¶ 9 (citing *Anderson v. State, Dept. of Justice* (1996), 275 Mont. 259, 262, 912 P.2d 212,

5

214; *Bauer v. State* (1996), 275 Mont. 119, 122, 910 P.2d 886, 888). We then review the court's conclusions of law to determine whether they are correct. *Kleinsasser*, ¶ 9.

¶18 "Because a presumption of correctness attaches to the State's act of suspending or revoking a driver's license, the driver bears the burden of proving that the suspension or revocation of a driver's license was improper." *Kleinsasser*, ¶ 10 (quoting *Hulse v. State, Dept. of Justice*, 1998 MT 108, ¶ 14, 289 Mont. 1, ¶ 14, 961 P.2d 75, ¶ 14).

## Issue 1.

¶19 *Whether the District Court erred in its determination that a private driveway is a way of this State open to the public.*

¶20 In its March 10, 2000 order denying Krause's petition for reinstatement of his driver's license, the District Court determined that the "lane or access road providing access from Highway 278 into the residence of Mark and Dee Boka is a 'way [of this State] open to the public' as contemplated and defined under applicable Montana law." Thus, the court concluded that under Montana's implied consent statute (§ 61-8-402, MCA) Officer Heinecke "acted properly and appropriately" in seizing Krause's driver's license when Krause refused to submit to a breathalyser test.

¶21 Krause argues that the District Court erred in concluding that the Bokas' driveway is a way of this State open to the public. Hence, he maintains that the revocation of his license pursuant to the implied consent statute cannot stand because he was not on a way of this State open to the public at the time of his arrest.

¶22 However, despite Krause's contentions to the contrary, the implied consent statute

6

does not require that a defendant be *found and arrested* upon a way of this State open to the public. It only requires that an officer have *reasonable grounds to believe* that a defendant *had been driving* or *had been in actual physical control* of a vehicle upon ways of this State open to the public. More specifically, the implied consent statute provides in pertinent part as follows:

> **Blood or breath tests for alcohol, drugs, or both.** (1) A person who operates or is in actual physical control of a vehicle upon ways of this state open to the public is considered to have given consent to a test or tests of the person's blood or breath for the purpose of determining any measured amount or detected presence of alcohol or drugs in the person's body.
> (2) (a) The test or tests must be administered at the direction of a peace officer when:
> (i) *the officer has reasonable grounds to believe that the person has been driving or has been in actual physical control of a vehicle upon ways of this state open to the public* while under the influence of alcohol, drugs, or a combination of the two and the person has been placed under arrest for a violation of 61-8-401; . . .

Section 61-8-402, MCA (emphasis added).

¶23 In addition, even though the District Court concluded that the Bokas' driveway is a way of this State open to the public, that conclusion is irrelevant to our determination here as there is ample evidence to support the conclusion that Krause had been driving upon a way of this State open to the public other than the Bokas' driveway. We have repeatedly stated that we will uphold a correct decision of a district court regardless of the lower court's reasoning in reaching its decision. *Hulse*, ¶ 15 (citing *Hagan v. State*

7

(1994), 265 Mont. 31, 35, 873 P.2d 1385, 1387).

24¶ In this case, Krause's truck did not suddenly materialize out of thin air in the Bokas' driveway. Krause had to have driven it there and to do so he had to have driven upon Highway 278 which is only 20 or 30 feet from the Bokas' driveway. There is no question that Highway 278 is a way of this State open to the public. Furthermore, since Krause had been parked in the Bokas' driveway for only a few minutes, Krause's intoxicated condition (evidenced, even before he responded to any of Officer Heinecke's questions, by the smell of alcohol on his breath and his bloodshot and glassy eyes) occurred prior to his arriving at the Boka residence. Consequently, Officer Heinecke had reasonable grounds to believe that Krause had been driving upon Highway 278--a way of this State open to the public--while under the influence of alcohol.

25¶ Krause cites *State v. Haws* (Okla. Crim. App. 1994), 869 P.2d 849, to support his proposition that the revocation of his driver's license was improper because the Bokas' driveway was not a way of this State open to the public. However, besides being of no precedential value to this Court, *Haws* is distinguishable from the case *sub judice.* Like Krause, Haws was discovered asleep in his vehicle in someone else's driveway. However, the Court in *Haws* dismissed the charges against him because Oklahoma's DUI statute (47 O.S. § 11-902) required that Haws "have been on the streets, highways, turnpikes or public parking lots that have been dedicated to the public." *Haws*, 869 P.2d at 850.

¶26 Unlike the defendant in *Haws*, Krause is not challenging his DUI conviction. He is appealing the denial of his petition to reinstate his driver's license. In Montana, a district court may consider only a limited number of issues in a driver's license reinstatement proceeding. Section 61-8-403(4)(a), MCA. Unlike Oklahoma, a district court in Montana may consider *whether the officer had reasonable grounds to believe* that the person had been driving or was in actual physical control of a vehicle upon ways of this State open to the public while under the influence of alcohol. Section 61-8-403(4)(a)(i), MCA. Officer Heinecke had such reasonable grounds in this case.

¶27 Moreover, as we previously noted, "[b]ecause a presumption of correctness attaches to the State's act of suspending or revoking a driver's license, the driver bears the burden of proving that the suspension or revocation of a driver's license was improper." *Kleinsasser*, ¶ 10. Krause has not met his burden here.

¶28 Incidentally, the version of the Oklahoma statute provided to this Court by Krause in the appendix to his reply brief, actually states: "It is unlawful and punishable as provided in this section for any person to drive, operate, or be in actual physical control of a motor vehicle *within this state* who . . . is under the influence of alcohol." Obviously, Oklahoma's legislators have toughened their laws since the court's decision in *Haws.* Now, according to

47 O.S. § 11-902 (OSCN 2000), driving under the influence is prohibited everywhere in the state of Oklahoma no matter what type of road or driveway one is on.

¶29 Accordingly, without determining whether the Bokas' driveway is a way of this State open to the public, we affirm the decision of the District Court because there was ample evidence in the record to support the court's conclusion that Krause had been driving or in actual physical control of a vehicle upon a way of this State open to the public.

**Issue 2.**

¶30 *Whether the District Court erred in denying Krause's motion to exclude statements he made in response to questioning by Officer Heinecke before Officer Heinecke identified himself as a law enforcement officer.*

¶31 Prior to the hearing on his petition for reinstatement of his driver's license, Krause filed a motion in limine to suppress various statements he made to Officer Heinecke. The District Court denied Krause's motion and the statements were admitted into evidence over Krause's objection.

¶32 We have previously stated:

> "The purpose of a motion in limine is to prevent the introduction of evidence which is irrelevant, immaterial, or unfairly prejudicial." Accordingly, the authority to grant or deny a motion in limine "rests in the inherent power of the court to admit or exclude evidence and to take such precautions as are necessary to afford a fair trial for all parties."

*Hulse*, ¶ 15 (quoting *City of Helena v. Lewis* (1993), 260 Mont. 421, 425-26, 860 P.2d 698, 700). Hence, we will not overturn a district court's grant or denial of a motion in limine absent an abuse of discretion. *Hulse*, ¶ 15.

¶33 Krause argues that pursuant to Montana's stop and frisk statute (§ 46-5-402(4),

MCA), before asking him where he had been and if he had been drinking, Officer Heinecke was required to inform Krause that he was a peace officer; that the stop was not an arrest, but rather a temporary detention for an investigation; and that, upon completion of the investigation, Krause would be released if not arrested. Thus, Krause asserts that since he was not provided with the pertinent information before questioning, his statements to Officer Heinecke should have been suppressed.

34¶ The State argues on the other hand that Krause's contention would be true only if Officer Heinecke had reason to suspect that Krause was armed and presently dangerous as provided by subsection (1) of § 46-5-402, MCA. The State maintains that under this subsection of the statute, since Officer Heinecke had no reason to suspect that Krause was armed and dangerous, subsection (4) is not applicable.

35¶ The State also argues that this was an "investigative stop" not a "stop and frisk" and that Montana's investigative stop statute (§ 46-5-401, MCA), contains no requirements similar to those found in § 46-5-402(4), MCA. Thus, the State asserts that, under § 46-5-401, MCA, Officer Heinecke had the authority to obtain or verify an account of Krause's presence or conduct or to determine whether to arrest him.

36¶ However, § 46-5-402, MCA provides:

> **Stop and frisk**. A peace officer who has lawfully stopped a person *under 46-5-401 or this section*:
> (1) may frisk the person and take other reasonably necessary steps for protection if the officer has reasonable cause to suspect that the person is armed and presently dangerous to the officer or another person present;

11

(2) may take possession of any object that is discovered during the course of the frisk if the officer has probable cause to believe the object is a deadly weapon;

(3) may demand the name and present address of the person; *and*

(4) *shall inform the person, as promptly as possible under the circumstances and in any case before questioning the person, that the officer is a peace officer, that the stop is not an arrest but rather a temporary detention for an investigation, and that upon completion of the investigation, the person will be released if not arrested.* [Emphasis added.]

Therefore, § 46-5-402, MCA, by its terms, clearly and unambiguously applies to a stop made pursuant to § 46-5-401, MCA. Moreover, because subsection (4) of § 46-5-402, MCA, begins with the term "shall" it is mandatory whether the stop is an "investigative stop" under § 46-5-401, MCA, or a "stop and frisk" under § 46-5-402, MCA.

37¶ While we suspect that the Legislature may not have intended to require that peace officers give the warning contemplated in § 46-5-402(4), MCA, when a person is stopped for a DUI investigation where there is no intention to frisk, that is not how the statute reads. However, in the construction of a statute our job "is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted." Section 1-2-101, MCA.

38¶ Accordingly, we hold that the District Court erred by not suppressing the statements Krause made to Officer Heinecke prior to Officer Heinecke giving the warning as set forth in § 46-5-402(4), MCA.

**Issue 3.**

39¶ *Whether the District Court erred in denying Krause's motion to exclude the results*

*of Krause's blood test.*

40¶ After he was released from custody, Krause went to a local hospital for an independent blood alcohol test. The State obtained the results of that blood test through an investigative subpoena. Prior to the hearing on his petition for reinstatement of his driver's license, Krause filed a motion in limine to exclude the results of that blood test from the hearing. The District Court denied Krause's motion and the test results were admitted into evidence over Krause's objection.

41¶ On appeal, Krause argues that the District Court erred in admitting the results of his blood test on the basis that it was not relevant to any issue in the case. He points out that a valid arrest is necessary *prior* to the time an officer requests a blood or breath test and that an arrest cannot be justified based on evidence that is obtained after the fact. The decision as to the validity of the arrest and, thus, the officer's request must be based on the information he had at the time. It cannot be bolstered by information obtained after the fact. Rules 401 and 402, M.R.Evid.

42¶ The State argues that the evidence of Krause's blood alcohol test was introduced to substantiate the credibility of Officer Heinecke's observations and opinion. The State maintains that the evidence was introduced to "shore up" Officer Heinecke's credibility as a witness, not to retrospectively validate Officer Heinecke's belief that Krause had committed the offense of driving under the influence.

43¶ However, as Krause points out in his reply brief, under Rule 608(a), M.R.Evid.:

13

> The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but *subject to these limitations*: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.
> [Emphasis added.]

Here, Officer Heinecke's character for truthfulness had not been attacked, nor did the evidence of Krause's blood alcohol test refer to Officer Heinecke's character for truthfulness or untruthfulness. There was no legitimate purpose for the introduction of the blood test evidence, thus the District Court should have excluded it.

44¶ Accordingly, we hold that the District Court erred by not excluding the results of Krause's blood alcohol test.

## Conclusion

45¶ We hold that it is irrelevant whether the Bokas' driveway is a way of this State open to the public. There was sufficient evidence in the record to conclude that Krause had been driving or in actual physical control of a vehicle upon the ways of this State open to the public prior to his arrival at the Boka residence.

46¶ Moreover, because we hold that the District Court erred by not suppressing the statements Krause made to Officer Heinecke and by not excluding the results of Krause's blood alcohol test, we reverse and remand to the District Court for a new hearing. We further hold that on remand the District Court should not consider any statements made

14

by Krause prior to the time when the warning under § 46-5-402(4), MCA, was given (if indeed it was), nor should the court consider the results of Krause's blood alcohol test.

47¶ Affirmed in part, reversed in part and remanded for further proceedings consistent with this Opinion.

/S/ JAMES C. NELSON

We concur:

/S/ KARLA M. GRAY
/S/ PATRICIA COTTER
/S/ W. WILLIAM LEAPHART
/S/ TERRY N. TRIEWEILER