No. 02-157

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 315

JOSEPH R. MOORE,

       Petitioner and Appellant,

  v.

STATE OF MONTANA,

       Respondent and Respondent.

APPEAL FROM:    District Court of the Second Judicial District,
In and for the County of Silver Bow,
The Honorable Kurt Krueger, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Edmund F. Sheehy, Jr., Cannon & Sheehy, Helena, Montana

      For Respondent:

          Hon. Mike McGrath, Attorney General; John Paulson,
Assistant Attorney General, Helena, Montana

          Robert M. McCarthy, Silver Bow County Attorney; Michael W. Clague,
Deputy County Attorney, Butte, Montana

          Submitted on Briefs: December 5, 2002

          Decided: December 17, 2002

Filed:

_____
Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1 Following an arrest for driving under the influence of alcohol, the Appellant, Joseph Moore, filed a petition in the Second Judicial District Court, Silver Bow County, for reinstatement of his driver's license. The District Court denied Moore's petition and Moore appeals. We affirm.

¶2 The sole issue on appeal is whether the District Court erred when it denied Moore's petition for reinstatement of his driver's license.

## BACKGROUND

¶3 On December 28, 2001, Montana Highway Patrol Officer Chris Costello was driving his patrol car eastbound on Interstate 90 near the Montana Avenue interchange in Butte, Montana. Officer Costello observed an eastbound vehicle, approximately one half mile in front of him, veer off of the Interstate and strike the guardrail on the shoulder of the right hand lane. Officer Costello maintains that the vehicle did not stop following the collision and, instead, continued to the Harrison Avenue interchange where it exited the Interstate. Officer Costello followed the vehicle and initiated an investigatory stop.

¶4 Upon approaching the vehicle, Officer Costello determined the driver to be the Appellant, Joseph Moore. While talking to Moore about the collision, Officer Costello detected an odor of alcohol emanating from Moore's person. Officer Costello observed that Moore spoke with a slurred speech and that his eyes were red and

2

glassy. Moore admitted to drinking alcohol in Anaconda, Montana, earlier in the evening.

¶5 Officer Costello proceeded to administer standardized field sobriety tests. Moore performed the horizontal gaze nystagmus test but would not provide a sample for a preliminary breath test analysis. At that point, Officer Costello placed Moore under arrest for driving under the influence of alcohol. Later, at the police station, Moore again refused to submit a breath sample for analysis. As such, Officer Costello seized Moore's driver's license, pursuant to § 61-8-402(4), MCA. Costello also issued Moore citations for failure to give notice of an accident and failure to maintain insurance.

¶6 On January 17, 2002, Moore filed a petition in the District Court for reinstatement of his driver's license. Moore essentially argued that Officer Costello lacked the requisite particularized suspicion to initiate the investigatory stop. Following a hearing, the District Court entered its Findings of Fact, Conclusions of Law, and Order on March 4, 2002. The District Court concluded that Officer Costello lawfully initiated an investigatory stop, attained the requisite probable cause to arrest Moore, and lawfully seized Moore's driver's license. Accordingly, the District Court denied Moore's petition. On March 8, 2002, Moore filed a notice of appeal from the District Court's order.

STANDARD OF REVIEW

¶7 We review a district court's findings of fact regarding the denial of a petition for reinstatement of a driver's license to

3

determine whether those findings are clearly erroneous. *Kleinsasser v. State*, 2002 MT 36, ¶ 9, 308 Mont. 325, ¶ 9, 42 P.3d 801, ¶ 9. We then review the court's conclusions of law to determine whether they are correct. *Kleinsasser*, ¶ 9. The State's act of suspending or revoking a driver's license is presumed correct. *Kleinsasser*, ¶ 10. Therefore, the burden rests with the petitioner to prove that the State improperly suspended or revoked the license. *Kleinsasser*, ¶ 10.

## DISCUSSION

¶8 Did the District Court err when it denied Moore's petition for reinstatement of his driver's license?

¶9 Section 61-8-403(4)(a), MCA, limits a court's inquiry to specific issues in driver's license reinstatement proceedings. Although Moore raised two of the issues in his petition, the first issue proved dispositive, thus, rendering consideration of the second issue moot. As a practical matter, the only relevant issue under consideration was whether Officer Costello "had reasonable grounds to believe that . . . [Moore] had been driving or was in actual physical control of a vehicle upon ways of this state open to the public while under the influence of alcohol, drugs, or a combination of the two . . . ." *See* § 61-8-403(4)(a)(i), MCA.

¶10 The "reasonable grounds" requirement in § 61-8-403(4)(a)(i), MCA, is the equivalent of the "particularized suspicion" standard articulated in § 46-5-401, MCA. *Kleinsasser*, ¶ 11. Section 46-5-401, MCA, provides:

> **Investigative stop.** In order to obtain or verify an account of the person's presence or conduct or to determine whether to arrest the person, a

4

> peace officer may stop any person or vehicle that is observed in circumstances that create a particularized suspicion that the person or occupant of the vehicle has committed, is committing, or is about to commit an offense.

We apply a two-part test to determine whether a law enforcement officer had sufficient particularized suspicion to justify an investigative stop. The State must show: (1) objective data from which an experienced officer could make certain inferences; and (2) a resulting suspicion that the occupant of the vehicle in question is or has been engaged in some wrongdoing. *Kleinsasser*, ¶ 12. Whether a particularized suspicion exists is a question of fact dependent on the totality of the circumstances surrounding the investigative stop. *Grindeland v. State*, 2001 MT 196, ¶ 10, 306 Mont. 262, ¶ 10, 32 P.3d 767, ¶ 10.

¶11    Here, Officer Costello claims that he initiated the investigatory stop, in part, based on a belief that Moore violated § 61-7-108, MCA. Section 61-7-108, MCA, provides, "The driver of a vehicle involved in an accident resulting in injury to or death of any person or property damage to an apparent extent of $500 or more shall immediately by the quickest means of communication give notice of the accident . . . ." Moore argues that Officer Costello could formulate no suspicion that Moore was engaged in wrongdoing because "Officer Costello had no such objective manifestation that Moore was not going to report the accident by the quickest means, which was to drive to his own house and call."

¶12    At the reinstatement hearing, Officer Costello testified that he witnessed the vehicle in question hit the guardrail on the Interstate. According to Costello, the vehicle did not stop following the collision. As for the resulting damage, Officer Costello testified to the following:

The vehicle in question had some taillight damage to the back. It had a white light to the rear–to the right-hand side where it impacted with the guardrail. Basically, the entire passenger side of the vehicle was damaged from the accident . . . .

. . . .

I not only could see the vehicle, but as I passed, the damage to the guardrail, the vehicle basically impacted, in different areas, this guardrail. And I've had enough experience in the past, working with the Department of Transportation on their guardrail areas, that just in itself was probably pretty close to four or five hundred dollars in damage, other–and that's not even including the vehicle.

Once I got up behind the vehicle, I could tell there was extensive damage to the passenger side.

Finally, as for reporting the accident by the quickest means available, Officer Costello testified as follows:

Q: How did you objectively determine that this vehicle was not going to report – or the driver of this vehicle was not going to report the accident by the quickest means possible?

A: There was, I believe, a Thriftway at the intersection of Amherst and Harrison that the vehicle could have pulled into and used the telephone. The vehicle continued northbound past that area.

. . . .

[L]ike I testified before, he had an opportunity to stop at Amherst and Harrison

at this pay phone there, and he also had an opportunity to stop at Lisac's

Tri-Stop, if he wanted to, and report the accident.

¶13 Moore offered evidence to contradict the above testimony. However, the District Court concluded that "Officer Costello . . . testified credibly regarding the objective data that led him to

6

infer or suspect that Petitioner had been involved in an accident and engaged in wrongdoing." The weight of the evidence and the credibility of the witnesses are "exclusively the province of the trier of fact. If the evidence conflicts, it is within the province of the trier of fact to determine which shall prevail." *State v. Palmer* (1991), 247 Mont. 210, 214, 805 P.2d 580, 582 (citations omitted). Based on the foregoing, we conclude that there is sufficient evidence in the record to indicate that Officer Costello had the requisite particularized suspicion to justify an investigatory stop. As this was the primary issue raised by Moore, we hold that the District Court did not err when it denied Moore's petition for reinstatement of his driver's license.

¶14 Affirmed.


/S/ JIM REGNIER


We Concur:


/S/ PATRICIA COTTER
/S/ TERRY N. TRIEWEILER
/S/ JAMES C. NELSON
/S/ JIM RICE



7