JUSTICE MORRIS
delivered the Opinion of the Court.
¶1 We once again address the issue of whether the State may admit the results of a defendant’s Preliminary Breath Test (PBT) as substantive evidence at trial. We earlier held in State v. Strizich (1997), 286 Mont. 1, 952 P.2d 1365, State v. Weldele, 2003 MT 117, 315 Mont. 452, 69 P.3d 1162, and State v. Snell, 2004 MT 334, 324 Mont. 173, 103 P.3d 503, that the State had failed to prove the PBT’s statistical reliability and therefore rejected it as substantive evidence. The Eighth Judicial District Court, Cascade County, found in this case, however, that the State had presented sufficient evidence supporting the reliability of the PBT to permit the results of David Damon’s *278 (Damon) PBT as substantive evidence at his trial along with two statements that he made to law enforcement. Damon appeals from these rulings and from the District Court’s sentence designating him as a persistent felony offender. We agree that the State met its burden in this case and affirm the District Court in all respects.
¶2 We address the following issues on appeal:
¶3 1. Whether the District Court abused its discretion in determining
that Damon’s PBT result proved sufficiently reliable to be worthy of admission as substantive evidence at trial.
¶4 2. Whether the District Court abused its discretion in admitting evidence of certain statements that Damon made to police during an investigatory stop in spite of the officer’s failure to recite the advisories required by §46-5-402(4), MCA (2001).
¶5 3. Whether the District Court’s designation of Damon as a persistent felony offender fell within the parameters set by statute.
BACKGROUND
¶6 A law enforcement officer allegedly observed Damon driving erratically in the evening hours of December 9, 2002, and pulled him over. As the officer approached Damon’s vehicle, Damon opened his door and began explaining his erratic driving. The officer noticed Damon’s slurred speech and detected a strong odor of alcohol. The officer conducted a series of field sobriety tests. During the course of these tests, Damon blurted out ‘5ust give me a DUI,” and Tm already drunk.” The officer then administered a PBT, also known as a Preliminary Alcohol Screening Test (PAST), that revealed Damon’s blood alcohol content (BAC) to be 0.274. The officer took Damon to the police station where his belligerent behavior prevented officers from administering a second breath test with the station’s non-portable instrument.
¶7 The State charged Damon with the following offenses: driving under the influence of alcohol (DUI), fourth or subsequent offense, a felony (Count I); driving while privilege to do so is suspended or revoked, a misdemeanor (Count II); no insurance, a misdemeanor (Count III); and disorderly conduct, a misdemeanor (Count IV). The prosecutor timely filed a notice of intent to treat Damon as a persistent felony offender, based on Damon’s previous felony DUI conviction of January 14,1999.
¶8 The District Court held a hearing on August 7,2003, and October 8,2003, to determine whether the results from Damon’s PBT would be admissible at trial. The State and Damon presented expert testimony *279 on this issue. The District Court issued a written order on November 26, 2003, finding the results of the PBT at issue, the Aleo-Sensor III, to be sufficiently reliable and accurate as an evidentiary tool and allowing the State to introduce the evidence at Damon’s tried.
¶9 Damon moved to suppress various statements that he had made that the police officer recorded on videotape during the investigatory stop based on the officer’s alleged failure to advise him as to the nature of the stop pursuant to the now-repealed §46-5-402(4), MCA (2001). The District Court granted Damon’s motion in part and the court ultimately required the State to excise certain statements from the audio of the tape, but allowed to remain Damon’s statements to police ‘just give me a DUI,” and Tm already drunk.”
¶10 The District Court held Damon’s trial on December 8, 2003, and December 9,2003. The jury convicted Damon and the court sentenced him on March 10, 2004. The District Court sentenced Damon to ten years, with five years suspended, on the felony DUI charge and also designated him to be a persistent felony offender.
¶11 Damon appeals from the court’s evidentiary rulings and the court’s designation of him as a persistent felony offender.
STANDARD OF REVIEW
¶12 This Court reviews rulings on the admissibility of evidence, including oral testimony, under an abuse of discretion standard. Snell, ¶ 17. We leave the determination of the relevancy and admissibility of evidence to the sound discretion of the trial judge and we will not overturn it absent a showing of abuse of discretion. Snell, ¶ 17. We review criminal sentences for legality; that is, we determine whether a sentence falls within statutory parameters. State v. Webb, 2005 MT 5, ¶ 8, 325 Mont. 317, ¶ 8, 106 P.3d 521, ¶ 8; State v. Eaton, 2004 MT 283, ¶ 11, 323 Mont. 287, ¶ 11, 99 P.3d 661, ¶ 11.
DISCUSSION ISSUE ONE
¶13 Whether the District Court abused its discretion in determining that Damon’s PBT result proved sufficiently rehable to be worthy of admission as substantive evidence at trial.
¶14 Damon’s sole argument rests on his claim that the District Court abused its discretion in concluding that the PBT used in this case, the Aleo-Sensor III, is scientifically rehable. Damon contends that the Aleo-Sensor III cannot determine accurately a person’s BAC as used by police officers in field conditions. Damon relies on several earher *280 decisions addressing this same issue, including Strizich, Weldele, and State v. Crawford, 2003 MT 118, 315 Mont. 480, 68 P.3d 848. Damon specifically admitted during oral argument, however, that he had not challenged the procedures followed by the officer who administered the test. He farther conceded that he had not challenged the efficacy of the administrative regulations followed by the officer in administering the PBT.
¶15 The State contends it presented extensive expert testimony and evidence to the District Court regarding the reliability of the AlcoSensor III. The State further maintains that the field protocols used by the administering officer in this case cure any reliability problems.
¶16 Rule 702, M.R.Evid., which is identical to its federal counterpart, governs the admissibility of expert testimony. Rule 702 provides that if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise.
¶17 In Barmeyer v. Montana Power Co. (1983), 202 Mont. 185, 657 P.2d 594, overruled on other grounds by Martel v. Montana Power Co. (1988), 231 Mont. 96, 103, 752 P.2d 140, 145, this Court explained that ‘it is better to admit relevant scientific evidence in the same manner as other expert testimony and allow its weight to be attacked by cross-examination and refutation.”Barmeyer, 202 Mont. at 193-94, 657 P.2d at 598 (citation omitted). Barmeyer remains the law today. See State v. Southern, 1999 MT 94, ¶ 56, 294 Mont. 225, ¶ 56, 980 P.2d 3, ¶ 56.
¶18 Ten years after we decided Barmeyer, the United States Supreme Court, in Daubert v. Merrell Dow Pharms., Inc. (1993), 509 U.S. 579, 593-94, 113 S.Ct. 2786, 2796-97, 125 L.Ed.2d 469, set forth various factors to guide trial courts assessing the reliability of proffered scientific expert testimony. We have held, however, that the district court’s gatekeeper role established by Daubert applies only to the admission of novel scientific evidence in Montana. See State v. Moore (1994), 268 Mont. 20, 42, 885 P.2d 457, 471, overruled on other grounds by State v. Gollehon (1995), 274 Mont. 116, 121, 906 P.2d 697, 701. We have assessed novelty from a very narrow perspective. For instance, in State v. Hocevar, 2000 MT 157, ¶ 56, 300 Mont. 167, ¶ 56, 7 P.3d 329, ¶ 56, we held that expert testimony regarding Munchausen Syndrome by Proxy to be “neither novel nor scientific” and therefore not subject to a Daubert analysis. We similarly held that the results of *281 the horizontal gaze nystagmus (HGN) field sobriety test did not constitute novel scientific evidence in Hulse v. State, Dept. of Justice, 1998 MT 108, ¶ 69, 289 Mont. 1, ¶ 69, 961 P.2d 75, ¶ 69, thereby making the Daubert factors inapplicable in determining whether HGN test results could be admitted as substantive evidence.
¶19 Thus, we have encouraged a trial court, presented with scientific evidence, novel or otherwise, to construe liberally the rules of evidence so as to admit all relevant expert testimony pursuant to Barmeyer. Hulse, ¶ 63. The court must employ a conventional analysis under Rule 702, M.R.Evid., when a party presents an issue concerning the admissibility of scientific evidence in general. The preference of liberal admissibility subject to stringent cross-examination set forth in Barmeyer applies. The State seeks to admit scientific evidence in the form of Damon’s PBT result. Under Rule 702, M.R.Evid., if such scientific evidence will assist the trier of fact to determine a fact in issue, a qualified expert witness may testify about it. State v. Sandrock, 2004 MT 195, ¶ 27, 322 Mont. 231, ¶ 27, 95 P.3d 153, ¶ 27.
¶20 We do not operate on a clean slate, however, with respect to whether PBT results can be admitted as substantive evidence of guilt. In Strizich, we concluded that PBT results did not constitute substantive evidence of the amount of alcohol present in a person’s body, but instead represented an “estimate” of alcohol concentration for the purposes of establishing probable cause to believe that a person was under the influence of alcohol prior to making an arrest. Strizich, 286 Mont. at 12, 952 P.2d at 1372. We based this holding on the statutory language of §61-8-404, MCA (1995), and §61-8-409, MCA (1995), neither of which specifically provided that results of a PBT would be admissible as substantive evidence of guilt. Strizich, 286 Mont. at 11-12, 952 P.2d at 1371. We also questioned, however, the reliability of the PBT in the field due to testing procedures and officer error. Strizich, 286 Mont. at 12, 952 P.2d at 1372.
¶21 The Legislature amended §61-8-404, MCA (1995), while Strizich was on appeal to this Court, to allow for the admission of PBT results as substantive evidence at trial. See § 61-8-404(b)(i), MCA. Though mindful of the Legislature’s intent in seeking to broaden the scope of potentially admissible evidence, we remain the final arbiter of questions regarding the ultimate admissibility of evidence. See City of Missoula v. Robertson, 2000 MT 52, ¶ 55, 298 Mont. 419, ¶ 55, 998 P.2d 144, ¶ 55. Thus, in Weldele, we deemed the defendant’s PBT result of 0.154 to be inadmissible as substantive evidence based on the State’s failure to prove its statistical reliability. Weldele, ¶¶ 57-58. *282 Nevertheless, we upheld Weldele’s DUI conviction based on our conclusion that the admission of the PBT results constituted harmless error as substantial other evidence confirmed Weldele’s intoxication. Weldele, ¶ 59. We explained, however, that our holding did not represent a blanket prohibition of PBT evidence at trial. In fact, we declared that if the State “establishes that the PBT results it seeks to admit are reliable and accurate, the results could then be admissible if they otherwise satisfy all other requirements for admissibility.” Weldele, ¶ 57; see also Crawford, ¶ 13 (holding defendant’s PBT result of 0.153 to be inadmissible as substantive evidence based on the State’s failure to prove its reliability).
¶22 More recently in Snell, the district court allowed admission of a PAST result of 0.168 pursuant to Rule 702, M.R.Evid. Snell, ¶ 37. We did not apply the Daubert factors in assessing admissibility. We determined instead that any variables in the testing went to the weight of the PAST evidence, rather than its admissibility. Snell, ¶ 37. We concluded that the State had failed to offer new evidence that demonstrated the reliability of the Aleo-Sensor III and consequently held that the State had not established sufficiently the accuracy and reliability of the PAST results so as to use the results for more than probable cause purposes. Snell, ¶ 37.
¶23 Both parties in this case admit that the scientific technology used in the Aleo-Sensor III to measure alcohol represents nothing new or novel. The instrument itself has existed since the 1970's. An Austrian scientist initially discovered the fuel cell technology used in the Alco-Sensor III PBT in the 1960s. We held in Southern that microscopic hair comparison was not novel because hair sampling with a microscope had been done for decades. Southern, ¶ 59. Likewise, a PBT or PAST using fuel cell technology does not represent a novel scientific technique that requires a court to apply the Daubert factors.
¶24 Further, Damon did not challenge the efficacy of the procedures used by the officer who administered the test and he did not challenge the adequacy of the administrative regulations underpinning those procedures. He only disputes the accuracy of the instrument’s measurements in field conditions due to potential operator error and other variables not present in a lab setting. Criticisms of specific applications of procedures or concerns about the accuracy of test results do not render a scientific theory and methodology invalid or destroy its general acceptance. State v. Ayers, 2003 MT 114, ¶ 48, 315 Mont. 395, ¶ 48, 68 P.3d 768, ¶ 48 (citation omitted). Questions of whether specific field conditions or protocols render the results of the *283 Aleo-Sensor III unreliable go to the weight of the evidence and not to its admissibility. State v. Weeks (1995), 270 Mont. 63, 83, 891 P.2d 477, 489 (citation omitted).
¶25 Before a PBT result may be admitted as substantive evidence, however, a court must conduct a conventional Rule 702, M.R.Evid., analysis and the test result must be demonstrably accurate and reliable and meet all other admissibility requirements. Weldele, ¶ 57; Hulse, ¶ 63; see also Weldele, ¶ 87 (Rice, J., specially concurring). Unlike Weldele, Crawford, and Snell, the State in this case presented sufficient evidence to prove the reliability and accuracy of Damon’s PBT result. Macquom Forrester, responsible for research and design of the technology used by the Aleo-Sensor III and chairman of the board of Intoximeters, Inc., the company that developed and manufactures the Aleo-Sensor III, testified that the instrument’s margin of error in the field falls in the ten percent range. Forrester also noted that the instrument repeatedly has met the higher standard of a five percent margin of error.
¶26 Damon’s expert, Dewayne K. Beckner, a self-employed blood alcohol consultant from California, testified that the Aleo-Sensor III is accurate and reliable only when the operator follows certain protocols. Beckner conceded, however, that the officer can overcome the instrument’s limitations by following these protocols. These protocols include waiting a minimum of fifteen minutes before administering the PBT to ensure that the subject does not ingest any material orally, testing the subject twice, ensuring that all instruments have been certified and properly calibrated, training and certifying the administering officer, and considering the effect of temperature and other variables on the result. He further contended that the instrument lacks various safeguards, such as the ability to detect mouth alcohol, but he did not dispute that the instrument’s margin of error in field tests falls in the ten percent range.
¶27 The officer in the case measured Damon’s BAC at 0.274. This value represents more than twice the legal limit of intoxication, which still stood at 0.10 at the time of Damon’s offense. Section 61-8-401, MCA (2001). The PBT’s ten percent margin of error places Damon’s BAC within the range of 0.247 to 0.301. Once again, Damon did not challenge the PBT’s ten percent rate of error in the field and his expert, Beckner, conceded that the Aleo-Sensor III achieved this level of accuracy in the field. Damon further acknowledged that the State followed all current testing protocols set forth in the administrative regulations, one of which requires all PBT’s to meet a ten percent rate *284 of error. See Rule 23.4.213(l)(b), ARM. We conclude in light of these factors that the State met its burden in this case of establishing the accuracy and reliability of Damon’s PBT result in showing that his BAC exceeded the then legal limit of 0.10. Thus, the District Court did not abuse its discretion in admitting the results of Damon’s PBT.
¶28 Cross-examination provided Damon ample opportunity to address his concerns regarding the effect of field conditions on the PBT result. We adhere to our settled principle of admitting relevant scientific evidence in the same manner as other expert testimony and allowing its weight to be attacked by cross-examination and refutation. Ayers, ¶ 48. Thus, we reaffirm our central holding in Barmeyer, that fit is better to admit relevant scientific evidence in the same manner as other expert testimony and allow its weight to be attacked by cross-examination and refutation.” Barmeyer, 202 Mont, at 193-94,657 P.2d at 598. And since Damon admitted that the officer in this case followed the existing protocols as delineated by the administrative regulations and chose not to challenge the regulations themselves, we will not address Damon’s argument that the PBT result proved unreliable due to improper field protocols. Accordingly, we leave for another day the efficacy of those administrative regulations.
¶29 Finally, the dissent mistakenly characterizes this decision as an “about-face in our jurisprudence.” Dissent, ¶ 64. Though the dissent may complain that the result in this particular case differs from our earlier PBT admissibility cases, it may not genuinely claim that we have changed the applicable law. Here we applied the same standards used in our earlier cases, but found that in this instance the State had satisfied its evidentiary burden and the District Court had not abused its discretion in admitting the PBT. We expressly anticipated today’s result in our earlier cases. See Weldele, ¶ 57 (‘This is not to say that we will never approve trial admission of this evidence.’). Moreover, today’s decision does not render PBT evidence admissible “as a matter of law,” see Dissent, ¶ 63, any more than our decisions in Weldele, Crawford, and Snell barred such admission as a matter of law.
ISSUE TWO
¶30 Whether the District Court abused its discretion in admitting evidence of certain statements that Damon made to police during an investigatory stop in spite of the officer’s failure to recite the advisories required by §46-5-402(4), MCA (2001).
¶31 Section 46-5-402, MCA (2001), the so-called “stop and frisk statute,” which the Legislature repealed in 2003, provided that before *285 questioning a person, an officer had to inform the person of the nature of the stop. In fact, the officer had to inform the person that the officer was a peace officer, that the stop was not an arrest, but rather a temporary detention for an investigation, and that upon completion of the investigation, the person would be released if not arrested. Section 46-5-402(4), MCA (2001).
¶32 Damon contends that the District Court should have suppressed all of the statements that he made to the investigating officer due to the officer’s failure to recite the advisories for investigative stops required by §46-5-402(4), MCA (2001). Damon relies exclusively on our opinion in State v. Krause, 2002 MT 63, 309 Mont. 174, 44 P.3d 493. The State concedes that the officer failed to recite the advisories, but claims that the District Court’s ruling complied with Krause because Damon spontaneously uttered the statements ‘just give me a DUI,” and Tm already drunk,” without any prompting by the investigating officer.
¶33 We suppressed a DUI suspect’s statements in Krause where the defendant made the statements in response to questioning by an investigating officer before the officer had given the suspect the advisories. Krause, ¶¶ 30-38. We recently reiterated that an officer’s questioning triggers the advisories required by § 46-5-402(4), MCA (2001). State v. Nelson, 2004 MT 310, ¶ 16, 323 Mont. 510, ¶ 16, 101 P.3d 261, ¶ 16. Here, the District Court properly excluded all statements that Damon made in response to questioning by the investigating officer. The record, including the officer’s audiotape and videotape, reflects, however, that Damon spontaneously uttered his offending statements and that he was not responding to any specific questioning by the investigating officer. We cannot say the District Court abused its discretion when it admitted Damon’s spontaneous statements.
ISSUE THREE
¶34 Whether the District Court’s designation of Damon as a persistent felony offender fell within the parameters set by statute.
¶35 Damon raises three issues regarding his designation as a persistent felony offender. He contends the District Court arbitrarily designated him as a persistent felony offender in view of the fact that other felony DUI defendants have not been sentenced pursuant to § 46-18-502, MCA, the persistent felony offender statute. He also claims the statute is unconstitutional as applied to him. Finally, he argues that the specific felony DUI sentencing provisions of §61-8-731, MCA, *286 conflict with the more general provisions of §46-18-502(1), MCA, and should preclude enhancement of his sentence.
¶36 Concerning the first two issues, we limit our review to whether Damon’s sentence falls within the parameters set by statute. Webb, ¶ 8. This Court’s Sentence Review Division is the appropriate avenue to address disproportionate sentence concerns. See State v. Herd, 2004 MT 85, ¶ 11, 320 Mont. 490, ¶ 11, 87 P.3d 1017, ¶ 11. Further, §46-18-502, MCA, makes no distinction between or among the types of felonies to which it applies, and it does not exclude offenders convicted of DUI violations. State v. Yorek, 2002 MT 74, ¶ 18, 309 Mont. 238, ¶ 18, 45 P.3d 872, ¶ 18.
¶37 With respect to the third issue, this Court already determined that §61-8-731, MCA, falls under the ambit of the persistent felony offender statute. Yorek, ¶ 18; State v. Pettijohn, 2002 MT 75, 309 Mont. 244, 45 P.3d 870. A district court possesses the authority to designate and sentence a persistent felony offender pursuant to § 46-18-502, MCA, when the underlying charge meets the definition of a felony and the State has provided proper notice of its intent to seek persistent felony offender status under §46-13-108, MCA. Yorek, ¶ 18; see also Pettijohn, at ¶¶ 13-14. The State met both of these requirements here.
¶38 The dissent contends that Yorek and Pettijohn are not controlling because §61-8-731, MCA, was amended in 2001. Dissent, ¶ 66. Those cases applied the pre-amendment statute. The primary difference is § 61-8-731, MCA (1999), imposed only a mandatory prison term, while the amended statute allows for treatment as an alternative to imprisonment. Section 61-8-731, MCA. According to the amended version of the statute, an offender convicted of a fourth or subsequent DUI must be sentenced to the Department of Corrections for a term of 13 months, a portion of which may be served on probation if the offender successfully completes the specified alcohol treatment program. Section 61-8-731(1)(a), MCA. Further, the statute requires the district court to impose a sentence of five years, all of which must be suspended. Section 61-8-731(l)(b), MCA. In contrast, the persistent felony offender statute imposes a minimum sentence of five years, none of which can be deferred or suspended. Section 46-8-502(1), MCA. The amended statute is silent regarding the persistent felony offender statute. Section 61-8-731, MCA.
¶39 We follow the basic principle of statutory construction that Tw]here there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all.” Section 1-2-101, MCA. In general, the persistent felony offender *287 statute, § 46-18-502, MCA, conflicts with all specific sentencing provisions. Indeed, by its very purpose § 46-18-502, MCA, provides penalties that are more severe, and therefore inconsistent, with specific criminal statutes. But the question is not whether the sentencing provisions of specific crimes are inconsistent with §46-18-502, MCA. The question is whether ‘the underlying charge meets the definition of a felony, and the State has provided proper notice of its intent to seek persistent felony offender status.” Yorek, ¶ 18.
¶40 Driving under the influence remains a felony following the 2001 amendments. Section 61-18-731(1), MCA. The persistent felony offender statute defines a felony as an offense ‘for which a sentence to a term of imprisonment in excess of 1 year could have been imposed.” Section 46-18-501(1), MCA. Section 61-18-731(1)(a), MCA, provides for a prison term of 13 months. The fact that the 2001 amended version of the statute requires an offender to enter a treatment program does not alter the crime’s status as a felony. Furthermore, §61-8-731, MCA, contains no provision that makes §46-18-502, MCA, inapplicable and we will not insert omitted terms into a statute. Lodge Grass High School v. Hamilton (1994), 264 Mont. 290, 293, 871 P.2d 890, 892.
¶41 Affirmed.
CHIEF JUSTICE GRAY, JUSTICES WARNER, LEAPHART and RICE concur.